648 P.2d 341

**Mary Ann CLEMMER, Individually and as wife and Personal Representative of Rex G. Clemmer, Deceased, Plaintiff-Appellee,**

v.

**William H. CARPENTER and Employers Insurance of Wausu, Defendants-Appellants.**

**No. 5354.**

Court of Appeals of New Mexico.

June 8, 1982.

Rehearing Denied May 24, 1982.

Certiorari Denied July 19, 1982.

Leland S. Sedberry, Jr., Thomas L. Johnson, Modrall, Sperling, Roehl, Harris & Sisk, P. A., Albuquerque, for defendants-appellants.

Willard F. Kitts, Elizabeth E. Whitefield, Kitts & Whitefield, Albuquerque, for plaintiff-appellee.

304

## OPINION

LOPEZ, Judge.

The defendants appeal a judgment awarding death benefits to plaintiff in a workmen's compensation case. We affirm.

Rex Clemmer was employed by attorney William Carpenter as a legal assistant. He was also a member of the Coast Guard Reserve. Both Clemmer and Carpenter lived in Estancia and worked in Albuquerque.

On the morning of February 19, 1979, a Saturday, Clemmer was killed in an automobile accident while driving from Estancia to Albuquerque. It had snowed 10 inches the previous night. Clemmer was going to Albuquerque to attend a Coast Guard Reserve meeting at 7:45 a.m., and also to do some work for Carpenter after the meeting. He was supposed to contact and subpoena a witness for an upcoming trial the following Tuesday and pick up some transcripts that Carpenter had forgotten to take home. Carpenter needed the transcripts at home over the week-end, and Clemmer was to pick them up at the office and take them back to Carpenter in Estancia.

Clemmer's widow and stepdaughter receive dependency and indemnity compensation from the Veterans Administration as a result of Clemmer's death on the way to the Coast Guard meeting.

The defendants set out six points in their brief-in-chief but we consolidate the issues under three topics for discussion: 1. whether Rex Clemmer was engaged in a special mission for Carpenter at the time of his death; 2. whether the plaintiff is barred from receiving workmen's compensation benefits under the New Mexico Workmen's Compensation Act, because she is also receiving federal dependency and indemnity compensation; and 3. whether the dual purpose or employment doctrine is applicable to Clemmer's trip.

In addition to the points raised in their brief, at oral argument the defendants also raised the issue of this court's denial of their motion to remand to the trial court with instructions to dismiss the workmen's compensation claim. The basis for the defendants' motion was their contention that the plaintiff was estopped from claiming these benefits, because she settled a suit for damages against two tortfeasors who either caused or contributed to the fatal accident. The record indicates that the plaintiff, as personal representative of the estate of the decedent, settled damages against third party tortfeasors on behalf of the decedent's three daughters. She did not proceed in that case on her own behalf. The plaintiff filed a document that she had elected to seek entitlement under the Workmen's Compensation Act. She has not received and will not receive any monetary benefits from the settlement in question. The settlement occurred after the workmen's compensation suit was tried and after the brief-in-chief was filed, but before the answer brief was filed. Chief Judge Mary C. Walters denied defendants' motion to dismiss prior to submission of this case to this panel.

The portion of the Workmen's Compensation Act applicable to this issue is § 52–1–56(C), N.M.S.A. 1978:

The right of any workman, or, in case of his death, of those entitled to receive payments or damages for injuries occasioned to him by the negligence or wrong of any person other than the employer or any other employee of the employer, including a management or supervisory employee, shall not be affected by the Workmen's Compensation Act, but he or they, as the case may be, shall not be allowed to receive payment or recover damages therefor and also claim compensation from the employer, and in such case the receipt of compensation from the employer shall operate as an assignment to the employer, his or its insurer, guarantor or surety, as the case may be of any cause of action, to the extent of payment by the employer to the workman for compensation, surgical, medical, osteopathic, chiropractic, and hospital services and medicine occasioned by the injury which the workman or his legal representative or others may have against any other party for the injuries or death.

In *White v. New Mexico Highway Commission*, 42 N.M. 626, 83 P.2d 457 (1938), the New Mexico Supreme Court held that a release to a third party tortfeasor barred the claim of the claimant on a compensation case. *See* also *Kandelin v. Lee Moor Contracting Co.*, 37 N.M. 479, 24 P.2d 731 (1933) which dealt with a suit against a third party after compensation was paid. In *Brown v. Arapahoe Drilling Company*, 70 N.M. 99, 370 P.2d 816 (1962) the decedent's administrator and widow filed suit against a third party tortfeasor. After losing that action, she filed suit for workmen's compensation. The prior unsuccessful court action did not bar the second workmen's compensation action. Our Supreme Court said:

> Admittedly, if Brown's administrator had recovered in the third-party action, *White v. New Mexico Highway Commission, supra,* would be controlling; but here there was a judgment for the defendant, entered after a jury trial, and therefore no one has "received payment or recovered damages" and also claimed compensation. The statute plainly intends to prevent dual recovery, and we do not believe that an erroneous selection or election of remedy should be construed as forever terminating the right to receive the benefits of the Workmen's Compensation Act.

■■ The purpose of § 52–1–56(C) is to prevent dual recovery but that purpose does not extend to limiting accessibility to workmen's compensation benefits outside of a dual recovery situation. The policy set out in *Brown* favors the availability of an action under the Workmen's Compensation Act when dual recovery is not at issue. The plaintiff in this case elected to seek compensation only under the Workmen's Compensation Act. Therefore, the plaintiff's action for workmen's compensation benefits is not barred, and the denial of the defendants' motion was proper. We do not intend to set a precedent of reviewing every motion filed with this court. However, in this particular instance, we chose to clarify the action taken by this court on the defendants' motion.

The defendants formally challenged only findings of fact Nos. 8 and 9, but they clearly also took issue with finding No. 7 in their arguments. Those findings state:

> No. 7. That at the time of the accident the decedent was also on a special mission to Albuquerque in connection with the business of his employer, William H. Carpenter; that this business mission was such that the decedent's employer would have had to send someone else to Albuquerque to perform this mission had this business trip not coincided with the decedent's personal mission; and that this business trip would have been made in spite of the failure or absence of the decedent's personal mission.

> No. 8. That at the time of the accident the decedent was acting in the scope of his employment with William H. Carpenter and at that time was at a place where his employer's business required him to be.

> No. 9. That the death of Rex G. Clemmer was proximately caused by an accident arising out of and in the course of his employment with William H. Carpenter and was not intentionally self-inflicted.

The defendants have challenged conclusions Nos. 2, 3 and 4 which state:

> No. 2. That at the time of the accident the decedent was acting in the scope of his employment with William H. Carpenter and at that time was at a place where his employer's business required him to be.

> No. 3. That the death of Rex G. Clemmer was proximately caused by an accident arising out of and in the course of his employment with William H. Carpenter and was not intentionally self-inflicted.

> No. 4. That although the decedent was also on a personal mission at the time of the accident, his dependents are entitled to workmen's compensation benefits under the "Dual Purpose Doctrine".

*Special Mission*

The defendants argue that the decedent was not on a special mission or special er-

rand at the time of his death. Section 52–1–19, N.M.S.A.1978, sets out the "going and coming rule" in New Mexico:

As used in the Workmen's Compensation Act [52–1–1 to 52–1–69 NMSA 1978], unless the context otherwise requires, "injury by accident arising out of and in the course of employment" shall include accidental injuries to workmen, and death resulting from accidental injury, as a result of their employment and while at work in any place where their employer's business requires their presence, but shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which is not the employer's negligence.

In *Ross v. Marberry*, 66 N.M. 404, 349 P.2d 123 (1960), the New Mexico Supreme Court sets out the special mission, or special errand, exception to the going and coming rule:

This rule is subject to an exception, however. This is stated in 1 Campbell on Workmen's Compensation 173, as follows:

"Where an employee is requested by his employer to return and do 'a service outside his regular duty,' the sole purpose of which was to help his employer in the latter's business, a different rule applies, and the employee is then on a special errand. The special request for unusual service is the decisive factor which brings the employee, throughout the entire trip to and from the place of business, in the course of rendering a service for the employer."

Also, in *Avila v. Pleasuretime Soda, Inc.*, 90 N.M. 707, 568 P.2d 233 (Ct.App.1977), this court quoted the following criteria set out in *Youngberg v. Donlin Company*, 264 Minn. 421, 119 N.W.2d 746 (1963):

From an examination of the authorities which discuss the so-called special errand rule it appears that it has been applied where (a) there is an express or implied request that the service be performed after working hours by an employee who has fixed hours of employment; (b) the trip involved on the errand be an integral part of the service performed; and (c) the work performed, although related to the employment, be special in the sense that the task requested was not one which was regular and recurring during the normal hours of employment.

In *Edens v. New Mexico Health and Social Services Dept.*, 89 N.M. 60, 547 P.2d 65 (1976), the employee was sent by her employer in Albuquerque to a meeting in Santa Fe. On the way home from the meeting, the employee was fatally injured in an automobile accident. The New Mexico Supreme Court held that the employee was on a special mission for her employer, and that the special mission extended from the time she left home until the time she returned home. The employee was directed to attend the meeting by her employer, and the transportation to and from the meeting was included as part of the special mission. Therefore, the going and coming rule was not applicable to the travel to and from Santa Fe, and the employee was covered under the New Mexico Workmen's Compensation Act.

■ Clemmer did not have rigid working hours, but he normally worked a forty-hour week during regular business hours. He did not normally drive to Albuquerque to work on the week-ends. The work that Clemmer was planning to do for Carpenter on the Saturday he was killed could not wait until regular business hours. The following Monday was a holiday. He had to locate and subpoena a witness for a trial that Carpenter had on Tuesday. He also had to obtain some transcripts that Carpenter had forgotten to take home, so that Carpenter could work on a brief over the week-end. This work was not overtime, because Clemmer had to make a special trip to accomplish it. If Clemmer had not made the trip, someone else would have had to make it. In particular, Clemmer's purpose of picking up the transcripts to take them to Carpenter in Estancia was a sufficiently special errand to bring Clemmer's trip under the exception.

We have summarized the pertinent facts in this case, applying the rules of law from

*Marberry, Avila* and *Eden,* we conclude that there was substantial evidence to support the court's finding that Clemmer was on a special mission or errand for Carpenter at the time of his death.

*Federal Compensation*

■ The defendants argue that the trial judge failed to make necessary findings pertaining to the fact that Mrs. Clemmer is receiving federal compensation from the Veteran's Administration as a result of her husband's death. The defendants' argument on this point is confusing and without substance.

The defendants claim that Mrs. Clemmer's federal benefits are controlled by 14 U.S.C. § 760, which allows benefits for temporary members of the Coast Guard Reserve. It appears from the record that Mrs. Clemmer is receiving dependency and indemnity compensation under 38 U.S.C. § 410. However, it is immaterial to this case which federal statute provides for Mrs. Clemmer's federal compensation. The only question in this case is the effect of New Mexico law governing the receipt of benefits under the New Mexico Workmen's Compensation Act concurrently with other benefits.

Section 52–1–65, N.M.S.A.1978, states:

The payment or award of benefits under the workmen's compensation law of another state, territory, province or foreign nation to an employee or his dependents otherwise entitled on account of such injury or death to the benefits of this act [52–1–1 to 52–1–69 NMSA 1978] shall not be a bar to a claim for benefits under this act; provided that claim under this act is filed within one year after such injury or death. If compensation is paid or awarded under this act:

.  .  .  .  .

C. the total amount of death benefits paid or awarded under such other workmen's compensation law shall be credited against the total amount of death benefits due under this act.

Section 52–1–65 quite clearly fails to include any type of benefits from the federal government. There are some states with statutory provisions for offsetting certain types of federal compensation, but New Mexico has no such provision. See 4 Larson's Workmen's Compensation Law § 97.–35 (1981). In that section Larson's states that "[a]part from specific offset provisions, . . . the receipt of federal benefits does not ordinarily affect a worker's right to workmen's compensation benefits . . . ." Workmen's compensation benefits awarded under the New Mexico Workmen's Compensation Act, as in this case, are not barred or even offset by receipt of any federal benefits.

It is not within the province of this case to determine if applicable federal law would require an offset of federal benefits by receipt of state workmen's compensation benefits. A possible offset of federal benefits would have no effect on the award of benefits under state workmen's compensation law. The award of workmen's compensation benefits in this action is appropriate under the New Mexico Workmen's Compensation Act.

*Dual-Purpose Doctrine*

■ The dual-purpose doctrine provides that when a worker is on a trip which serves both a business and a personal purpose, and the business purpose would have necessitated the trip by someone even if it had not coincided with the personal purpose, then injury occurring on the trip is within the course of the worker's employment. 1 Larson's Workmen's Compensation Law § 18.00 (1978). *See Brown v. Arapahoe,* supra.

The question is whether attendance at a Coast Guard Reserve meeting is properly characterized as a personal mission. Larson states:

The dual-purpose rule applies whenever one of the two purposes is compensable and the other is not. This may occur not only when one is business and the other pleasure, but also when there are two business purposes, one of which would support compensation and the other not. 1 Larson's Workmen's Compensation Law § 18.14 (1978).

Clemmer's membership in the Coast Guard Reserve did support compensation, in that the surviving family received dependency and indemnity compensation based on the fact that Clemmer's death was service-related. Under 38 U.S.C., § 410 (and 14 U.S.C. § 760), the death had to be service connected in order to be compensable. Therefore, it is questionable whether the dual-purpose doctrine is applicable in this case.

A better analysis of the two purposes for which Clemmer undertook the trip from Estancia to Albuquerque is that they amounted to dual employment.

Dual employment occurs when a single employee, under contract with two employers, and under the separate control of each, performs services for the most part for each employer separately, and when the service for each employer is largely unrelated to that for the other. In such a case, the employers may be liable for workmen's compensation separately or jointly, depending on the severability of the employee's activity at the time of injury. 1C Larson's Workmen's Compensation Law § 48.40 (1980).

In dual-employment situation, when the activity during which the accident occurred cannot be attributed to only one employer, then both employers can be held liable. In *Pinson v. Industrial Comm'n*, 79 Ariz. 21, 281 P.2d 962 (1955) (discussed in § 48.50 of Larson's), the employee was self-employed in his ice business, and he also delivered produce for another company. The employee was killed when his truck overturned on the highway. On the day he was killed, he had been doing business for both jobs, and his work was not finished at the time of death. The Arizona Supreme Court held that Pinson was engaged in activities for both employers when he was killed and awarded Pinson's wife benefits from the company for which Pinson delivered produce.

It seems apparent that Pinson's employment required him to use the highways on his employer's business. Therefore, the fact that he was not then exclusively engaged in delivering produce for his employer is not controlling, because the solicitation of orders and collection of money was as much a part of Pinson's duties as the delivery. When the accident occurred Pinson had in his possession money belonging to his employer and orders which were to be filled the next day. Obviously then the employer derived advantages from Pinson's overall activities on the day in question. Furthermore, the evidence definitely shows that Pinson's work for the day in question was not completed. Had he lived, it appears other soliciting calls would have been made that night both at Winkelman and Hayden. Certainly under the circumstances it cannot be said that the exclusive responsibility for his travel rested upon the ice business. The two activities were inextricably entwined.

Additional cases utilizing the dual-employment approach to the award of workmen's compensation benefits include *Newman v. Bennett*, 212 Kan. 562, 512 P.2d 497 (1973), *Gehring v. Nottingham Lace Works*, 82 R.I. 190, 106 A.2d 923 (1954), and *Vance v. Hut Neckwear Co.*, 281 App.Div. 151, 118 N.Y.S.2d 327 (1952).

■ There are no New Mexico workmen's compensation cases which have considered a dual-employment situation. Although neither party has argued the theory of dual-employment, the facts in this case indicate that Clemmer was dually-employed at the time of his accident. Therefore, we adopt the dual-employment principles discussed above, and apply them to the facts of this case. When Clemmer was killed, he was driving from Estancia to Albuquerque to accomplish work for both the Coast Guard Reserve and William Carpenter. The fact that he intended to attend the Coast Guard Reserve meeting first does not negate the trip as regards his purposes for Carpenter, because he would have had to drive into Albuquerque for Carpenter anyway. Also, the fact that Clemmer was driving early in the morning does not negate his purpose of doing work for Carpenter when he was in Albuquerque.

In dual-employment situation, if the accident occurs when the work is clearly performing services for only one employer, then that employer is liable for any workmen's compensation benefits. If, however, the services being performed at the time of the accident cannot be attributed to a specific employer, but are services performed for both employers, then both employers are liable. In the latter case, the benefits are apportioned between the employers on the basis of the percentage of the worker's total wages paid by each employer. Each employer is liable for benefits based on the wages paid by that employer. *Pinson v. Industrial Comm'n*, supra; *Gehring v. Nottingham Lace Works*, supra.

In this case, it appears from the record that the amount of benefits awarded Mrs. Clemmer are based solely on the wages that Clemmer received from Carpenter. Any remuneration that he received from the Coast Guard Reserve was not included in the amount on which benefits were calculated. Therefore, the amount of the award in this case is not unfairly burdensome to Carpenter.

In its findings of fact, the trial court did not specifically refer to the dual-purpose doctrine, although it did characterize Clemmer's Coast Guard Reserve purpose as a "personal mission." Findings of fact will be liberally construed to support the judgment. *Martinez v. Earth Resources Company*, 87 N.M. 278, 532 P.2d 207, (Ct.App. 1975); *H. T. Coker Const. Co., v. Whitfield Transp., Inc.*, 85 N.M. 802, 518 P.2d 782 (Ct.App.1974).

There is substantial evidence to support the trial court's judgment in favor of the plaintiff. Although conclusion No. 4 implementing the dual-purpose theory, rather than the dual-employment theory, is incorrect, the judgment is correct. In *Schmitz v. New Mexico State Tax Commission*, 55 N.M. 320, 232 P.2d 986 (1951), the New Mexico Supreme Court held that even though one of the conclusions of law was clearly erroneous, it "was not prejudicial because the final judgment rendered was correct notwithstanding the court's misconception of the law upon which the judgment should have been based." Also, in *Heron v. Conder*, 77 N.M. 462, 423 P.2d 985 (1967), the New Mexico Supreme Court recognized that a conclusion of law was erroneous, but declined to correct the error, because it was harmless.

The evidence and the findings in this case support the award of workmen's compensation benefits. The judgment is correct. The trial court's use of the dual-purpose doctrine in conclusion No. 4 was not prejudicial to the defendants, and will not be reversed on appeal.

For reasons discussed above, the judgment of the trial court is affirmed. The plaintiff is awarded $2,500.00 for appellate attorney's fees.

IT IS SO ORDERED.

DONNELLY and NEAL, JJ., concur.