742 P.2d 1051

**Maria JUSTIZ, Petitioner,**

v.

**WALGREEN'S and the Travelers Insurance Company, Respondents.**

No. 16830.

Supreme Court of New Mexico.

Sept. 16, 1987.

Melvin L. Robins, Albuquerque, for petitioner.

Miller, Stratvert, Torgerson & Schlenker, P.A., Alice Thomlinson Lorenz, Albuquerque, for respondents.

## OPINION

WALTERS, Justice.

Respondents Walgreen's and the Traveler's Insurance Company appeal a worker's compensation award on the ground that the trial court, when computing benefits due, improperly aggregated petitioner's earnings from both of the worker's employments. We granted certiorari from the court of appeals' decision reversing the trial court, and now we reverse the court of appeals.

The issue is whether a worker's average weekly wage for compensation benefits is to be computed on the basis of wages the worker was earning in the employment in which she was injured, or on the basis of her total earnings from all of her employments.

### FACTS

Petitioner was employed as a full-time teacher in the Albuquerque Public School System and, during non-school hours, as a part-time liquor store clerk at Walgreen's. On March 23, 1984, while lifting a case of liquor at her job at Walgreen's, she suffered a compensable injury to her back. The trial court determined that as a result of the injury petitioner was totally unable to perform her duties as a liquor store clerk and was unable, to the extent of forty percent, to perform her job either as a teacher or as a sales clerk. The court held that she had sustained a combined disability of sixty percent.

The trial court aggregated petitioner's teaching and Walgreen's wages to determine the average weekly wage upon which

her benefit amount would be calculated. A divided panel of the court of appeals reversed and held that the wage calculation provisions of the Workmen's Compensation Act, NMSA 1978, Section 52–1–20, as interpreted in *Eberline Instrument Corp. v. Felix*, 103 N.M. 422, 708 P.2d 334 (1985), do not allow aggregation of wages under the facts of this case. We do not agree that either the statute or *Eberline* mandated that conclusion, and conclude that Judge Garcia correctly stated the law in his dissenting opinion.

Section 52–1–20 governs the method for computing average weekly wages. It provides, in pertinent part:

A. whenever the term "wages" is used, it shall be construed to mean the money rate at which the services rendered are recompensed under the contract of hire in force at the time of the accident, * * *

B. average weekly wages for the purpose of computing benefits provided in the Workmen's Compensation Act shall, except as hereinafter provided, be calculated upon the monthly, weekly, daily, hourly or other remuneration which the injured or killed employee was receiving at the time of the injury, * * *

C. provided, further, however, that in any case where the foregoing methods of computing the average weekly wage of the employee by reason of the nature of the employment or the fact that the injured employee has not worked a sufficient length of time to enable his earnings to be fairly computed thereunder, or has been ill or in business for himself, *or where for any other reason said methods will not fairly compute the average weekly wage; in each particular case, computation of the average weekly wage of said employee [shall be made] in such other manner and by such other method as will be based upon the* *facts presented [to] fairly determine such employee's average weekly wage[.]* (Emphasis added.)

We held in *Eberline* that a worker's compensation benefits were to be computed on the average weekly wage being earned by the employee at the time of his accident rather than on the average weekly wage he had been earning in his primary employment at some time prior to the accident. The employee, Felix, had been working for Eberline since 1978 as a utility worker. In 1982, Felix was given the choice of being laid off or accepting a lower-grade job as a machine operator at $6.35 per hour. Felix chose to continue working at the lower wage, and it was as a machine operator that he was injured on December 9, 1982. *Eberline*, 103 N.M. at 423, 708 P.2d at 335. We reasoned that, under the plain wording of Section 52–1–20(B)(4),[1] Felix's benefits pursuant to the Workmen's Compensation Act were to be calculated upon the hourly remuneration he was receiving at the time of the injury. It was unnecessary to consider Section 52–1–20(C) to determine Felix's benefits, because the method provided under Section 52–1–20(B)(4) fairly computed what Felix's average weekly wage was at the time of the accident. We observed that Section 52–1–20(C) would be controlling in unusual circumstances, as in *Kendrick v. Gackle Drilling Co.*, 71 N.M. 113, 376 P.2d 176 (1962) (injured worker's income erratic because he worked only a few days at each job), where a worker's average weekly wage could not "fairly be determined by the precise methods outlined in Section 52–1–20(B)." *Id.* at 424, 708 P.2d at 336.

Respondents vigorously urge that *Eberline* would limit determination of the average weekly wage to the amount petitioner was receiving under *a* specific "contract of hire in force at the time of the accident," and therefore was, as the court of appeals decided, only the hourly wage from her part-time employment at Walgreen's. They contend that since petitioner's aver-

---

1. Section 52–1–20(B)(4) provides:
   [W]here the employee is being paid by the hour, the weekly wage shall be determined by multiplying the hourly rate by the number of hours in a day during which the employee was working at the time of the accident, or would have worked if the accident had not intervened, to determine the daily wage; * *

age weekly wage at Walgreen's is fairly determinable by the precise methods outlined in Section 52–1–20(B), resort to Subsection (C) is inappropriate.

■ That argument overlooks the portion of Section 52–1–20(C) which directly applies to "any other reason [Subsection B] will not fairly compute the average weekly wage." *Eberline* does not preclude the aggregation of petitioner's wages from her two separate but concurrent employments if that is necessary to *fairly* compute petitioner's average weekly salary and, in fact, *Eberline* offers absolutely no insight on the question of an average weekly wage derived from more than a single employment. On the other hand, *Eberline* makes it clear that fair computation is the essence of the Section 52–1–20 calculation. Subsection (C) permits the trial court, in cases where a worker's weekly wages are for any reason not fairly determinable by the provisions of Subsections (A) or (B), to utilize such other manner or method as will fairly make that determination.

■ The primary test for disability entitling a worker to compensation is the capacity to perform work. *Medina v. Zia Co.*, 88 N.M. 615, 617, 544 P.2d 1180, 1182 (Ct.App.1975), *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1976). The trial court determined petitioner to be sixty percent unable to perform any work for which she was fitted by age, education, training, general physical and mental capacity, and previous work experience. Since, according to the trial court's findings, the injury occurring on the part-time job disabled petitioner from working at 100% capacity at either of her jobs, her capacity as a wage earner patently was impaired beyond the limits of the part-time job. Compensation benefits, therefore, were logically based on her combined wages and correctly reflected her reduced earning capacity in both employments. *See American Uniform & Rental Serv. v. Trainer*, 262 So.2d 193, 194 (Fla. 1972); 2 Larson, *Workmen's Compensation Law*, § 60–31(c) (1987).

It is the earning capacity of the whole person, not the capacity of the part-time or full-time worker that is at issue. *See*

*American Uniform & Rental Serv.*, 262 So.2d at 194. The fact that petitioner's earnings with the school system have not diminished does not mean her earning capacity has not been adversely affected. Actual earnings are not the same as earning capacity. *Mascarenas v. Kennedy*, 74 N.M. 665, 669, 397 P.2d 312, 315 (1964); *County of Maricopa v. Ind. Comm'n of Arizona*, 145 Ariz. 14, 19, 699 P.2d 389, 394 (App.1985). Fairness mandates consideration of what petitioner would have earned, in total, had she not been injured. According to 2 Larson, *Workmen's Compensation Law*, § 60.31(a) (1987) at 10–688, a growing number of jurisdictions have held earnings from more than one employment source are to be combined in the calculation of average weekly wages, whether or not the employments are related or similar.

Responding to the trial court's justification for aggregating wages as providing fairness to the employee, Walgreen's argues that the ruling is not fair to the employer, and grants petitioner more in benefits than she had earned previously from both jobs. Respondent emphasizes that petitioner is still able to perform her primary job as a teacher, and in the meantime she has been given a raise; that, with her disability benefits, she now receives more each year than she earned while working at two jobs. There is ample authority, however, for the proposition that an individual may work while still disabled and entitled to worker's compensation benefits. *Davis v. Homestake Mining Co.*, 105 N.M. 2, 3, 727 P.2d 941, 942 (Ct.App.), *cert. quashed*, 104 N.M. 702, 726 P.2d 856 (1986); *Roybal v. County of Santa Fe*, 79 N.M. 99, 102, 440 P.2d 291, 294 (1968). Walgreen's has not faced the fact that the amount which petitioner would be earning were it not for the injury would include earnings from all sources—that is, from both Walgreen's and the school system—including the raise she received subsequent to the accident.

As Professor Larson has noted in his text, 2 Larson, *Workmen's Compensation Laws* § 60.31(c) (1987), at 10–713, fairness to the employee and fairness to the employ-

er upon whose job the employee was injured are not necessarily symmetrical nor should the assessment of fairness be judged by the same standards. To the employee, the injury resulting in lost wages is everything; to the employer (and even more to the carrier), this is just one case among many. Only the injured worker bears the burden of reduced wages. But any unfairness to the employer, in the form of the extra cost of an injury to its employee who also is concurrently employed, is eventually offset by the times the employer may benefit when the injury occurs in the employee's other employment. Spreading the risk is the essential concept of a system such as workers' compensation. *Id.* In our view, that is the answer to the discussion of *liability* raised in the dissent hereto. Liability for compensation is an issue entirely separate from the calculation of benefit entitlement. Our resolution of this case in no way conflicts with but, indeed, reinforces the manner of assessing liability against the employer for whom services were being performed at the time of the injury, as enunciated in *Clemmer v. Carpenter,* 98 N.M. 302, 309, 648 P.2d 341, 348 (Ct.App.1982).

For the foregoing reasons, we reverse the majority decision of the court of appeals, agreeing with rationale of Judge Garcia's dissent. The judgment of the trial court is AFFIRMED.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and SOSA, Senior Justice, concur.

STOWERS, J., dissents.

RANSOM, J., not participating.

STOWERS, Justice, dissenting.

I dissent.

The majority argues that the district court was justified in aggregating petitioner Maria Justiz's (Justiz) wages from her two separate but concurrent employments pursuant to NMSA 1978, Subsection 52–1–20(C). However, by the clear and unambiguous language of this statute, Subsection C is only appropriate when the average weekly wage cannot be fairly computed by the

methods of computation provided for in Subsection B. No evidence was introduced in this case to prove that Justiz's average weekly wage could not be fairly *computed* according to Subsection B. The majority's reliance on Subsection C is therefore misplaced.

In its findings of fact and conclusions of law, the district court stated:

Combining the compensation rate for the two jobs (up to the maximum) was done because of § 52–1–25 N.M.S.A. 1978. Disability is decided by all of the work which a person is fitted: If disability can be denied because a workman can do other work than what he was doing at the time of the accident, *then it seems only fair that all the work he was doing should be considered for determining the amount of compensation.* [Emphasis added.]

What the district court considered "fair" under the circumstances should not be confused with the statutory term "fairly computed." As interpreted by this Court earlier in the case of *Kendrick v. Gackle Drilling Co.,* 71 N.M. 113, 376 P.2d 176 (1962), Subsection C (virtually identical to the former subsection at issue in the *Kendrick* case) is to be used in circumstances where, because of some practical difficulty such as the employee working only four days at the job, the actual mathematical computation of the employee's average weekly wages cannot be fairly *computed* by Subsection B of the same statute. Subsection C itself provides several examples of the type of situation wherein the "methods of computing the average weekly wage of the employee" cannot be fairly computed. Such examples include "the nature of the employment or the fact that the injured employee has not worked a sufficient length of time to enable his earnings to be fairly computed thereunder, or has been ill or in business for himself." The present case simply does not fall within the category of cases described in Subsection C.

Moreover, New Mexico has already addressed the issue of workmen's compensation liability in dual employment situations. The case of *Clemmer v. Carpenter,* 98

N.M. 302, 648 P.2d 341 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982), described dual employment as follows:

> Dual employment occurs when a single employee, under contract with two employers, and under the separate control of each, performs services for the most part for each employer separately, and when the service for each employer is largely unrelated to that for the other. In such a case, the employers may be liable for workmen's compensation separately or jointly, depending on the severability of the employee's activity at the time of injury.

*Id.* at 308, 648 P.2d at 347 (quoting 1C A. Larson, *The Law of Workmen's Compensation* § 48.40 (1980)). Next, the court went on to very clearly specify how liability for workmen's compensation was to be determined. It stated:

> *In dual-employment situation, if the accident occurs when the work[er] is clearly performing services for only one employer, then that employer is liable for any workmen's compensation benefits.* If, however, the services being performed at the time of the accident cannot be attributed to a specific employer, but are services performed for both employers, then both employers are liable.

*Id.* at 309, 648 P.2d at 348 (emphasis added).

While the court of appeals' dissent, in which the majority relies in this case, summarily dismissed the *Clemmer* case as being inapplicable in that the *Clemmer* case dealt with the doctrine of dual employment while the present case is one of concurrent employment, I find this a distinction without substance. Justiz's employment situation fits squarely within the *Clemmer* definition of dual employment. Consequently, since the accident occurred while Justiz was clearly performing services for only one employer, Walgreen's, then only Walgreen's should be liable for any workmen's compensation benefits. *See Clemmer.*

The use of the term "fairly computed" in the statute is presumed to carry its ordinary meaning. *See State v. Lujan,* 103

N.M. 667, 670, 712 P.2d 13, 16 (Ct.App. 1985), *cert. denied,* 103 N.M. 740, 713 P.2d 556 (1986) (citations omitted). Accordingly, I think the district court erred in aggregating Justiz's wages as there was nothing to prevent their fair computation pursuant to Subsection B as provided by the Legislature.

I believe the court of appeals' majority opinion correctly disposed of the issues in this case. I therefore dissent.