1998-NMCA-026

954 P.2d 98

**Dieter PESCH, Worker–Appellant,**

v.

**BODDINGTON LUMBER CO., and ITT Hartford, Respondents–Appellees.**

**No. 18346.**

Court of Appeals of New Mexico.

Jan. 20, 1998.

E. Justin Pennington, Law Offices of E. Justin Pennington, Albuquerque, for Worker–Appellant.

Kimberly A. Franklin, Hatch, Allen & Shepherd, P.A., Albuquerque, for Respondents–Appellees.

## *OPINION*

PICKARD, Judge.

1. The question in this appeal is whether a Workers' Compensation Judge (WCJ) may, in determining an award of attorney fees, consider adversely the fact that the worker's counsel engaged in the permissible practice of communicating with a witness prior to trial. We hold that it depends on the particular facts of the case. In this case, the WCJ reduced the award of attorney fees from a straight hours-times-hourly-rate amount because counsel had an ex parte communication with the worker's treating physician. Because the WCJ found the amount of hours expended by counsel to be reasonable and necessary and because the particular communication here did not appear improper, we cannot affirm the reduction in attorney fees

in this case. Therefore, we remand to the WCJ to reconsider the award of attorney fees.

## FACTS

2. Dieter Pesch (Worker) filed a claim for workers' compensation benefits and hired E. Justin Pennington (Counsel) to represent him. Following unsuccessful mediation, Worker's claim was assigned to a WCJ. The claim was settled before trial. A separate hearing was held to determine the amount of attorney fees.

3. Counsel sought attorney fees in the amount of 56,258.80 which represented approximately 54 hours of work at the rate of $110 per hour. The employer's insurer, ITT Hartford (Insurer), protested the amount of attorney fees, asking the WCJ to deny any recovery because of Counsel's "bad faith and oppressive conduct."

4. The claim of bad faith and oppressive conduct was based upon Counsel's communications with Worker's treating physician. On two occasions, Counsel communicated with the treating physician, Dr. Burg. The first communication, Counsel claims, was to determine whether Worker had a bona fide claim for workers' compensation benefits. Counsel claims that as a result of this communication, he learned of inaccuracies in Worker's medical records. Counsel then wrote Dr. Burg a letter which stated:

Since we spoke about this matter on March 1, 1996, I have received word that [Insurer] has retained counsel and has begun denying payments to [Worker] and his medical providers. In addition, [Insurer's] attorney, Kimberly Franklin, has requested an Independent Medical Examination of [Worker] .... As you suggested, I asked that Dr. Barry Diskant perform the evaluation, but Ms. Franklin would not agree....

I am particularly concerned with our conversation wherein you indicated that you had an independent recollection of [Worker's] complaints of neck, shoulder and arm pain during his early visits with you, but that those complaints had not been included in your notes relating to medical history. Because the IME will be dependent in

large part upon your notes, can you make sure that you have corrected your notes by addendum, or some other appropriate mechanism. Also, we discussed other bases for an impairment rating not previously considered by you.... Can you again make sure that your notes reflect these considerations so that Dr. Woods will have the benefit of your observations in this regard?

5. Counsel sent a copy of this correspondence to Insurer. After receiving this letter, Insurer filed a complaint with the Workers' Compensation Administration alleging that Counsel was attempting to improperly influence a health care provider. These same allegations of misconduct were reiterated by Insurer at the hearing to determine attorney fees. Counsel was required to retain an attorney and provide sworn testimony to the WCJ concerning his communications with Worker's treating physician.

6. The WCJ awarded Counsel 53,250, which represented 15.6% of Worker's recovery. In the WCJ's findings and conclusions, the WCJ indicated that Counsel reasonably and necessarily expended 54 hours of time in pursuing Worker's claim. The WCJ also found that Counsel's fee of $110 per hour was within the range of fees in the area where the case was heard. The WCJ also indicated that the issues in the case were contested to a more than average degree due to Counsel's ex parte communications with the treating physician. However, the WCJ also found that Counsel's contacts with the doctor did not rise to the level of bad faith, fraud, malice, or reckless disregard for the rights of Insurer or Worker's employer. Nevertheless, the WCJ stated in the proposed decision:

> While the communications between Worker's Counsel and the Physician did not rise to the level of bad faith, they were significantly ill-advised. The communications between Counsel and the Physician effectively "poisoned the well". In other cases where similar communications have occurred this Writer has found that the opinion of the health care provider who has been "woodshedded" was not deserving of much credibility. It is this Writer's belief

that the communications with the Physician contributed materially to an atmosphere of contention and very aggressive litigation. In summary, there are far better ways to address issues of clarification with a health care provider than ex parte communication with that provider even if the ex parte communication is not strictly illegal.

On appeal, Counsel challenges the WCJ's decision to award him a fee significantly less than the amount sought despite the finding that the amount of hours was reasonable and necessary to Worker's recovery.

**STANDARD OF REVIEW**

■ 7. An award of attorney fees is a matter within the WCJ's discretion. *Cordova v. Taos Ski Valley, Inc.*, 121 N.M. 258, 263, 910 P.2d 334, 339 (Ct.App.1995). On appeal, this Court will overturn an award of attorney fees only if the WCJ has abused his discretion. *Id.* An abuse of discretion occurs when the WCJ's decision is contrary to logic and reason. *Id.* at 263–64, 910 P.2d at 339–40. However, just as a WCJ may abuse its discretion by arbitrarily refusing to consider a proper factor, *id.* at 264, 910 P.2d at 340, a WCJ may abuse its discretion by giving controlling consideration to an improper factor. Finally, the evidence is reviewed in the light most favorable to the WCJ's ruling. *Id.*

**DISCUSSION**

**I. Pretrial Contact with Witnesses**

■ 8. Counsel claims that his pretrial contacts with Worker's treating physician were permissible and to the extent these contacts served as the basis for reducing the award of attorney fees, this constituted an abuse of discretion. The WCJ found that Counsel's ex parte communications with Dr. Burg led to a heightened degree of contention in the case. At the same time, however, the WCJ also found that the amount of hours expended by Counsel was reasonable and necessary to Worker's recovery of benefits. Therefore, Counsel argues, the decision to reduce fees on the basis of increased contentiousness was inconsistent with the finding that the hours were reasonable and necessary. We agree.

9. A common question that arises in litigation is the extent to which an attorney may meet with and prepare a witness for trial. In many countries it is considered unethical for a lawyer even to meet alone with a witness prior to the trial, such is the aversion to the possibility for contamination of the testimony. In the United States, however, we take a far different view. Here it is generally considered incompetent for a lawyer to fail to meet with and prepare a witness in advance of offering her testimony.

The practice of witness preparation is so widespread and entrenched as to be unassailable. It is justified on the theory that witnesses, especially clients, are entitled to the lawyer's help in ensuring that their testimony is presented accurately and persuasively. The justification is compelling.

Steven Lubet, *Modern Trial Advocacy: Analysis and Practice* 46 (National Institute for Trial Advocacy 1993).

10. Measured by this standard, we disagree with the WCJ's determination that Counsel's contacts with the treating physician were "ill-advised." Quite the contrary, this contact is permissible. There is nothing wrong with the type of communication in this case which, as revealed in the hearing, was for the purpose of determining whether Dr. Burg misunderstood Worker's medical history. We cannot condone a practice in the workers' compensation arena which would forbid or discourage attorneys from meeting with and interviewing potential witnesses, including health care providers. In some cases, such contact may have the salutary benefit of resolving factual questions without litigation and encouraging expeditious and inexpensive settlement. In other cases, such contact may have the adverse effects about which the WCJ is concerned. But to promulgate what appears to be an informal, yet inflexible, policy of discouraging, if not prohibiting, permissible conduct appears to us to be arbitrary.

11. We do not wish to be misunderstood as holding that the WCJ cannot consider conduct that causes an increase in litigiousness in setting the amount of fees. Overly aggressive lawyering that is unnecessary and accomplishes little more than increasing the amount of time expended is an appropriate factor for the WCJ to consider in determining fees. *See County of Bernalillo v. Sisneros,* 119 N.M. 98, 102, 888 P.2d 980, 984 (Ct.App.1994) (additional factors may be considered when determining a reasonable fee); *see also Woodson v. Phillips Petroleum Co.,* 102 N.M. 333, 338, 695 P.2d 483, 488 (1985) (trial courts have discretion to reduce or increase fees in accordance with all of the statutory and *Fryar* factors); *Fryar v. Johnsen,* 93 N.M. 485, 487, 601 P.2d 718, 720 (1979) (the time and effort expended by attorneys is a proper factor to consider). Yet we note that, as in this case, a finding that the amount of hours expended was reasonable and necessary to a worker's recovery is inconsistent with a finding of excessive and unnecessary litigiousness.

12. Additionally, although we hold that contact with witnesses is permissible and not a basis for reducing fees, we caution attorneys to insure that their communications do not involve misconduct.

The key is that counsel must, explicitly and implicitly, prepare the witness to give his or her own testimony, and not the testimony that the lawyer would favor or prefer. Most efforts to assist or empower the witness are ethical. Efforts at substitution or fabrication no matter how well-cloaked, are not.

Lubet, *supra* at 47. To the extent that an attorney's contacts with a witness involve misconduct, unethical behavior, or fraud, this is also a factor for the WCJ to consider in reducing fees. The hours expended in pursuing such behavior as well as other unnecessary hours caused by such behavior, would not be reasonable and necessary to a worker's recovery of compensation benefits. Nonetheless, in this case the WCJ found that Counsel's communications with the treating physician were not in bad faith and involved no misconduct or disregard for Insurer's rights.

13. Because the WCJ appeared to give controlling consideration to an improper factor and made inconsistent findings, we re-

mand this case to the WCJ to reconsider the award of fees.

## II. Other Factors Possibly Supporting the Award

14. Insurer claims that the WCJ reduced the amount requested because Worker was not completely successful in his claims. The WCJ found that Worker "was *relatively* successful in this cause." (Emphasis added.) This finding would support a reduction in attorney fees. *See Sisneros,* 119 N.M. at 103, 888 P.2d at 985 ("If a claimant achieves only partial success, a reasonable hourly rate for attorney services may be an excessive amount."); *Cordova,* 121 N.M. at 265, 910 P.2d at 341 (affirming a reduction in fees awarded in part because the worker was not completely successful in his claims).

15. Finally, it is also permissible for the WCJ, when awarding attorney fees, to consider as one factor the range of fees usually awarded in workers' compensation cases. *Woodson,* 102 N.M. at 338, 695 P.2d at 488 (ten to twenty percent is a useful guide); *Sisneros,* 119 N.M. at 103, 888 P.2d at 985 (same). Although the amount of fees awarded in this case represented 15.6% of Worker's recovery and although Worker's relative success would support the award, we nonetheless conclude that remanding this case for reconsideration of the fee award is proper in light of the inconsistent findings discussed above.

## III. Attorney Fees on Appeal

16. Counsel asks this Court to award him fees on appeal. Because the ultimate result is uncertain at this point, we decline to do so. On remand, however, the WCJ in his discretion may make an award of fees for the appeal. *See Manzanares v. Lerner's Inc.,* 102 N.M. 391, 394, 696 P.2d 479, 482 (1985) (holding that attorneys must bear the costs of proceedings for their benefit, but that they may receive fees for proceedings that increase the amount of fees); *see also Martinez v. Eight Northern Indian Pueblo Council, Inc.,* 1997 NMCA 078, ¶ 16, 123 N.M. 677, 944 P.2d 906 (holding that *Manzanares* is the appropriate authority in light of longstanding law permitting the award of

attorney fees when workers are benefitted), *cert. granted on other grounds,* No. 24,533, 123 N.M. 446, 942 P.2d 189 (N.M. Aug. 18, 1997).

## CONCLUSION

17. This case is remanded for reconsideration of attorney fees awarded below and to consider whether attorney fees on appeal should be awarded.

18. **IT IS SO ORDERED.**

ALARID and BUSTAMANTE, JJ., concur.