# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:  2013-NMCA-001

Filing Date: November 2, 2012

Docket No. 30,846

JODY VINYARD,

       Worker-Appellant,

v.

PALO ALTO, INC., d/b/a PIZZA HUT,
and MANUFACTURERS ALLIANCE
INSURANCE COMPANY,

       Employer/Insurer-Appellees,

and

Docket No. 31,044


JODY VINYARD,

       Worker-Appellant,

v.

PALO ALTO, INC., d/b/a PIZZA HUT,
and MANUFACTURERS ALLIANCE
INSURANCE COMPANY,

       Employer/Insurer-Appellees.

APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Gregory D. Griego, Workers' Compensation Judge

Law Office of Alvin R. Garcia, LLC
Alvin R. Garcia
Albuquerque, NM

1

for Appellant

Maestas & Suggett, P.C.
Paul Maestas
Albuquerque, NM

for Appellees

**OPINION**

**KENNEDY, Judge.**

**{1}**　This worker's compensation case poses the question of how to properly calculate a worker's average weekly wage when the worker held two concurrent jobs, one for nine weeks and one for fourteen weeks. Wages from both jobs must be assessed for the calculation of the average weekly wage. The method of calculating the average weekly wage when each job has a different duration is the sole issue in this case.

**{2}**　The Workers' Compensation Judge (WCJ) calculated the worker's wage based on the roughly nine-week time period[1] that the two jobs overlapped, holding as a matter of law that the method of calculation directed by NMSA 1978, Section 52-1-20(B) (1990) could not be fairly applied. The WCJ rejected the application of Subsection (B) to the full period of employment in each job because "it would result in counting of weeks where there was a wage from only one [e]mployer." The WCJ instead employed Section 52-1-20(C) to craft the average weekly wage based only on the nine weeks when the two jobs overlapped. The worker, who wanted the entire fourteen weeks of his second job included in the average, appealed.

**{3}**　We reverse, holding that when the facts support a separate computation for each employer, Subsection (B) should be employed to compute an aggregate average weekly wage for both employers. Subsection (B)(1) should be employed using the entire time of employment if the period is fewer than twenty-six weeks for any concurrent employer. Subsection (B) should be applied separately to each job, not limited to the shortest job, with an aggregate average weekly wage for all concurrent employers then being computed. In this case, the WCJ was required to average the wages the worker received from his other job for the full fourteen weeks of the worker's employment.

**{4}**　In addition, the employer appealed the award of attorney's fees. The employer maintained that the worker's attorney did not secure the entire award and lacked evidentiary proof and, therefore, was not fully entitled to compensation. We affirm the WCJ's award of attorney fees and remand for proceedings consistent with our Opinion.

---

[1]The actual number employed was 9.428 weeks.

2

## I.   FACTS

**{5}**     The facts of this case are not disputed.  Jody Vinyard (Worker) was injured in a traffic accident while working as a delivery driver for his employer, Palo Alto, d/b/a Pizza Hut (Employer) on December 6, 2009.  This injury arose out of, and in the course of, that employment.  The responsibility of Employer and its insurer, Manufacturers Alliance Insurance Company (collectively, Employer) to pay benefits is not at issue here.  Worker began working for Employer on October 1, 2009.  He had also been employed as a horse trainer for his family's business since September 1, 2009.  There is no dispute that Worker is entitled to receive compensation benefits reflecting his wages from both jobs.  The parties vigorously disputed how to compute the aggregate weekly wage to be used to determine the value of those benefits.

**{6}**     The WCJ considered four calculation options.  Employer suggested taking the sum of all wages that Worker was paid during the time employed by them, but calculating average wages for a twenty-six-week period, relying on Section 52-1-20 (B).  The WCJ specifically rejected this suggestion, stating that it would result in counting weeks when Worker only had one employer.  The WCJ noted another option—counting the fourteen weeks for both employers—but concluded that this would also count wages for only one employer in some weeks.  Worker suggested the calculation of an average weekly wage by what the WCJ called an "asymmetric  option" that would have divided the horse training wages by fourteen weeks and the pizza delivery wages by nine weeks and then averaged the two.  This approach was taken by a mediator in the case.  Employer disdained this recommended resolution, claiming that this would count time with another employer prior to Worker's employment with Employer, and the WCJ rejected it as well.

**{7}**     The method of computation has real implications.   When the wages for each employer received during this finite period of 9.428 weeks was divided, the result was an aggregate average weekly wage of $886.74.  In comparison, the mediator's figure of $945.68 was based on the full fourteen weeks of Worker's employment as a horse trainer from September 1 through December 6, 2009.

**{8}**     The WCJ concluded that because Worker had multiple employers for different amounts of time, there is "no controlling authority in New Mexico determining how this particular wage calculation should be arrived at" and that Worker's wage could not "be fairly calculated under Section 52-1-20(B)."   The WCJ thus held that "the most rational and reasonable option" was to count those weeks only "where Worker was employed by both [e]mployers" and adopted that approach as "a matter of law" for the calculation in his partial summary judgment.  The WCJ computed an average weekly wage for Worker by dividing his wages from each job by the period of October 1, 2009 through December 6, 2009, the nine-week period of time that Worker was employed in both jobs.  Worker maintains the full time he was employed in each job should be counted and asks us to address the appropriate application of Section 52-1-20 in this appeal.

3

## II.    DISCUSSION

**{9}**    We review questions of statutory interpretation and application de novo. *State ex rel. Children, Youth and Families Dep't v. Steve C.*, 2012-NMCA-045, ¶ 8, 277 P.3d 484. Although a misapplication of the law is considered an abuse of discretion, our courts review de novo the initial decision of whether the correct legal standard has been applied. *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450. If the correct law has been applied to the facts, the district court's decision must be affirmed when it is supported by substantial evidence. *See id.* ¶ 8.

### A.    Calculation of Two Average Weekly Wages Under Section 52-1-20

**{10}**    The purpose of the Workers' Compensation Act is to compensate an injured employee for the reduction of his earning capacity. *Lozano v. Archer*, 71 N.M. 175, 180, 376 P.2d 963, 967 (1962). The test for entitling a worker to compensation is the worker's entire capacity to earn wages for performing work. *Justiz v. Walgreen's*, 106 N.M. 346, 348, 742 P.2d 1051, 1053 (1987). The compensation due is for loss of earning capacity. *Id.* Fairness mandates compensating the worker according to what he would have earned in total had he not been injured. *Id.* at 349, 742 P.2d at 1054. Section 52-1-20 was enacted to promote fair calculation of average wages for injured workers, as well as to provide a measure of fairness to employers by trying to eliminate influences that might inflate or deflate the wage from a fair average. Considering "periods of unusually high or low wages" dictates finding an average over time, so as not to unfairly benefit or prejudice the worker. *Shaw v. Wal-Mart Stores, Inc.*, 117 N.M. 118, 119-20, 869 P.2d 306, 307-08 (Ct. App. 1994) (allowing employee's concurrent employment to be used in calculating the average wage).

**{11}**    Section 52-1-20 states, in pertinent part:

> B.    the average weekly wage shall be determined by computing the total wages paid to the worker during the twenty-six weeks immediately preceding the date of injury and dividing by twenty-six, provided that:
>
> > (1)    if the worker worked less than twenty-six weeks in the employment in which the worker was injured, the average weekly wage shall be based upon the total wage earned by the worker in the employment in which the worker was injured, divided by the total number of weeks actually worked in that employment;
>
> > . . . .
>
> C.    provided, further, however, that in any case where the foregoing methods of computing the average weekly wage of the employee by reason of the nature of the employment or the fact that the injured employee has been ill or in business for himself or where for any other

4

reason the methods will not fairly compute the average weekly wage, in each particular case, computation of the average weekly wage of the employee in such other manner and by such other method as will be based upon the facts presented fairly determine such employee's average weekly wage[.]

The presumptive period where it can be used is twenty-six weeks under Section 52-1-20(B). Subsection (B)(1) encompasses situations where periods of employment are shorter. We regard the statute as having a preference for maximizing the opportunity to calculate an average wage over a substantial period of time.

**{12}** All parties recognize the significance of our Supreme Court's opinion in *Justiz* to this case. The court in *Justiz* held that where a worker had concurrent employment and where the injury arose in the course of only one job, the worker was entitled to compensation for his entire loss of earning capacity in both jobs. The *Justiz* court went on to hold that the employer on whose job site the injury occurred would be solely responsible for the worker's compensation based on the aggregate of the worker's average wages with both employers.

**{13}** In *Justiz*, our Supreme Court dismissed the employer's argument that only the employment in which the injury was sustained could be used to compute the average wage. The Supreme Court stated that, even though a prior case, *Eberline Instrument Corp. v. Felix*, 103 N.M. 422, 426, 708 P.2d 334, 338 (1985), did not speak to the calculating of an aggregate average weekly wage where a worker had two concurrent jobs, the worker's compensation benefits were to be computed on the average weekly wage earned by the employee at the time of the injury. *Justiz*, 106 N.M. at 347-48, 742 P.2d 1052-53. *Justiz* stated that Section 50-1-20(B) would ordinarily be used to compute an average weekly wage where the computation could fairly be done and that Section 52-1-20(C) provided the ability to perform the calculation of an aggregate average wage for concurrent jobs. *Id.* It rejected the argument that Subsection (B) restricted the average weekly wage to the employment being performed at the time of the accident and precluded the averaging-in of wages from other employment. *Justiz*, 106 N.M. at 348, 742 P.2d 1053.

**{14}** Section 52-1-20 was amended by the Legislature in 1990 after the *Justiz* case was decided, but Subsection (B) still provides a formula by which to calculate average weekly wage from an employer. We held that *Justiz* continues to apply to concurrent employment situations after the 1990 amendment to Section 52-1-20. *Shaw*, 117 N.M. at 119-20, 869 P.2d at 307-08. Subsection (C) allows for the use of other factors to compute the average weekly wage, but only if the preceding formulas cannot be fairly applied.

**{15}** As did the Supreme Court in *Justiz*, we recognize the preference expressed in Subsection (C) that restricts its application to those circumstances "where the foregoing methods of computing the average weekly wage of the employee . . . *will not fairly compute the average weekly wage*[.]" *Justiz*, 106 N.M. at 347, 742 P.2d at 1052. The Supreme Court made it clear that the essence of Section 52-1-20 is to reach a fair computation and that where a worker's weekly wages are for any reason not fairly determinable by Subsections

5

(A) or (B), then Subsection (C) permits "such other manner . . . [or] method as will . . . fairly" make that determination. Section 52-1-20(C). This reaffirmed the application of *Kendrick v. Gackle Drilling Co.*, 71 N.M. 113, 376 P.2d 176 (1962) (holding that erratic income arising from the fact that employee was only working a few days at each job justified employing Subsection (C) for the unusual circumstance); *accord Eberline Instrument*, 103 N.M. at 424-25, 708 P.2d at 336-37; *Griego v. Bag'N Save Food Emporium*, 109 N.M. 287, 292-93, 784 P.2d 1030, 1035-36 (Ct. App. 1989) (finding that abnormal overtime hours during the grand opening constituted unusual circumstances in the calculation of average weekly wages). Thus, we hold that in concurrent employment circumstances, as in single employment, absent some specific unusual circumstance, Subsection (A) or (B) should be used to calculate the average weekly wage. Unusual circumstances may arise in the nature of the worker's wage-earning situation that would prevent a fair computation by using Subsections (A) and (B). *See Villanueva v. Sunday Sch. Bd. of S. Baptist Convention*, 121 N.M. 98, 101, 908 P.2d 791, 794 (Ct. App. 1995) (applying a different method for calculating wages under Subsection (B) where a seasonal worker was only employed for six months each year over the past ten-year period). Despite Subsection (B) seeming to consider wages from a single employer, if its methods can fairly produce an aggregate average for concurrent employment situations, Subsection (C) does not authorize a departure, and Subsection (B) will be used to calculate an average weekly wage from each employment that will then be used to calculate an aggregate average.

**{16}** Regular wages are ascertainable, and an average weekly wage can fairly be computed by dividing wages by weeks worked. Average weekly wages from more than one job can themselves be averaged. Subsection (B)(1) is clear that employment for less than twenty-six weeks compels dividing the total wages earned by the worker in that job by the number of weeks "actually worked in that employment[.]" It was arbitrary for the WCJ to exclude six weeks of employment without a specific basis in fact, when Subsection (B)(1) states that the "total number of weeks actually worked in that employment" is the number to be used to calculate the average wage in a job, and no facts demanded an unusual circumstances exception. For the WCJ to depart from this method of computation by using a number of weeks different than was specified in Subsection (B) was error. We consequently view Subsection (C) as designed to permit the fair computation of average weekly wages in multiple employment cases, primarily by any means provided in the statute or, secondarily, by any other means that might be needed and fairly employed to effectuate the purpose of Section 52-1-20. Here, it was possible to determine the average weekly wage for both jobs by applying Subsection (B)(1) to each. Averaging the results yields a single aggregate average weekly wage. No further exploration for alternatives under Subsection (C) was required. In fact, other than an *ad hoc* selection of the number of weeks utilized in the computation, the WCJ correctly used the method provided in Subsection (B).

**{17}** The WCJ's mistake was in going outside of Subsection (B) in choosing a shorter number of weeks Worker was employed by Employer (Pizza Hut) when computing the total wages earned in both jobs. No legal or factual reason for that choice was provided, or an explanation as to why the statutory fourteen-week period would create circumstances that

unfairly computed the horse training average wage. The WCJ's incorrect legal conclusion turned on the determination that any calculation under Subsection (B) was "not appropriate" and that the average weekly wage could not be "fairly calculated" simply "because of multiple employers."

**{18}** The WCJ's conclusion did not address why his own method would result in a more fair result either legally or factually than any of the other three suggested in the case. Subsection (C) allows the expansion of the computational method contained in Subsection (B) to be used for calculating an aggregate average wage for more than one job. With that proviso, it is Subsection (B)(1) that applies when wages and time of employment are finite and an average weekly wage for individual employers can be calculated for an aggregate average, even among more than one job. This case does not require departure from applying available statutory formulas. It involves ascertaining whether all of Worker's wages during fourteen weeks as a horse trainer should, in fairness, be averaged into the computation of his average weekly wage. No facts indicate that using the full fourteen weeks of the horse training work would result in any unfairness.

**{19}** We therefore reverse the WCJ's legal conclusion that Subsection (B) cannot be applied as a matter of law. We further hold that, under a typical concurrent employment situation such as this case, each employer's average weekly wage is to be individually determined according to Subsection (B)(1), and an average weekly wage based on the aggregate of all averages should then be calculated. *See, e.g.*, *Sturchio v. Wausau Underwriters Ins. Co.*, 172 P.3d 1260, 1262-63 (Mont. 2007) (holding that the methods of calculating average weekly wage to a single employer should be employed as to each concurrent employer, using the result to calculate the aggregate average weekly wage). We conclude that no factual reason justified any departure by the WCJ from Subsection (B) in this case. The WCJ should have calculated the average weekly wage by dividing wages from Employer by 9.428 weeks and Worker's wages from his concurrent horse training employment by fourteen weeks in accordance with Subsection (B). We remand for further proceedings consistent with this Opinion.

## B.     The WCJ's Determination of Attorney's Fees is Affirmed

**{20}** Employer separately appealed the award of attorney's fees to Worker's counsel. The parties appeared at a hearing on December 20, 2010. Both sides submitted requested findings of fact and conclusions of law. Worker's counsel was awarded $15,000 in attorney fees to be borne fifty-fifty by each side. The order makes a number of findings of fact: (1) the absence of any settlement offers; (2) the present value of Worker's award and finding that it was substantially the result of Worker's attorney's efforts; (3) the amount of work expended; (4) the complexity and novelty of the case; and (5) Worker's attorney's skill and success in the case. Worker's counsel secured benefits for Worker in the amount of $86,037.15 and was awarded 17.43% of that amount in fees, divided equally between the parties. Employer's requested findings establish that it paid partial permanent disability benefits based on its assessment of a 23% rating, which was increased in the compensation

7

order by almost doubling it to 40% and that it had under-calculated the average weekly wage to be used. Such an increase is substantial and substantial evidence of work performed.

**{21}** Employer states that at the hearing, Worker's counsel did not itemize his hours and did not otherwise substantiate that his work resulted in significant benefit to Worker. Thus, Employer claims that the WCJ abused his discretion in making the award. NMSA 1978, Section 52-1-54(E) (2003); *Cordova v. Taos Ski Valley, Inc.*, 121 N.M. 258, 264, 910 P.2d 334, 340 (Ct. App. 1995) (reviewing the WCJ's award of attorney fees for abuse of discretion and directing the appellate court to defer to the WCJ's decision if it appears that the request for fees received individualized scrutiny). Employer directs us to no legal requirement for a specific application for fees. In fact, the authority cited by Employer supports a conclusion that evidentiary support for a fee award requires the presentation of sufficient facts for the WCJ to rule whether at a hearing or not. *Lopez v. K.B. Kennedy Eng'g Co.*, 95 N.M. 507, 508, 623 P.2d 1021, 1022 (Ct. App. 1981); *Tafoya v. S & S Plumbing Co.*, 97 N.M. 249, 252, 638 P.2d 1094, 1097 (Ct. App. 1981) (holding that "evidentiary support . . . can mean facts presented during or after trial" (internal quotation marks and citation omitted)). Worker's counsel, contrary to Employer's argument, did not fail to submit any documents supporting its request for attorney fees. Worker submitted proposed findings and conclusions from which the WCJ made findings of its own and concluded that an award was appropriate. It appears that the compensation order makes requisite findings of fact in compliance with *Fryar v. Johnsen*. 93 N.M. 485, 601 P.2d 718 (1979).

**{22}** As a small illustration, Worker's counsel points out that Employer paid its share of attorney's fees on January 26, 2011. Employer states that Worker "cites to nothing in the record which establishes that Employer/Insurer have paid their portion of the attorney fees awarded to Worker's counsel in this case," but waited until their reply brief to "be clear about it" and acknowledge that their portion of the fees were paid. This sort of behavior on appeal, coupled with a record demonstrating some sharp-elbowed tactics by Employer, supports the WCJ's finding in the compensation order awarding attorney fees that "[t]he issues in this cause were contested to a more than average degree." *See Pesch v. Boddington Lumber Co.*, 1998-NMCA-026, ¶ 11, 124 N.M. 666, 954 P.2d 98 (holding that aggressive representation that adversely affects the progress of the case is a proper factor to consider when awarding attorney fees). While pleased that Employer's counsel did not allow us to labor under a misconception forever, we note that, by looking at the whole record, Worker prevailed and received more benefits than Employer had calculated to be due. And the WCJ's findings and conclusions are supported by an adequate basis in the pleadings. The attorney fee award does not appear unreasonable and is entitled to our deference. We affirm.

## III.    CONCLUSION

**{23}** We reverse the decision of the WCJ and remand to the Worker's Compensation Administration to recalculate compensation based on the foregoing Opinion. We affirm the award of attorney fees.

**{24}   IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**TIMOTHY L. GARCIA, Judge**

_____

**J. MILES HANISEE, Judge**

**Topic Index for _Vinyard v. Palo Alto, Inc._, No. 30,846**

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**WORKERS COMPENSATION**
Apportionment
Attorney Fees
Basis for Compensation

**STATUTES**
Interpretation
Legislative Intent