708 P.2d 334

**EBERLINE INSTRUMENT CORPORA-
TION and Commercial Union
Insurance Companies, Petitioners,**

v.

**Chris W. FELIX, Respondent.**

**No. 15771.**

Supreme Court of New Mexico.

Oct. 31, 1985.

Montgomery & Andrews, P.A., Walter J. Melendres, Katherine A. Weeks, Santa Fe, for petitioners.

Matthew L. Chacon, Espanola, for respondent.

**OPINION**

RIORDAN, Justice.

Petitioners Eberline Instrument Corporation and Commercial Union Insurance Company, (Eberline) appealed a worker's compensation award, claiming that the trial court applied an incorrect hourly rate when computing benefits due. Respondent Chris W. Felix, (Felix) cross-appealed raising various issues. The Court of Appeals ruled against Eberline. We granted Eberline's petition for certiorari, and now reverse the Court of Appeals.

 The issue on certiorari is whether compensation benefits should be computed based on the average weekly wage that a workman is earning *at the time of his accident* or, on an average weekly wage

which a workman was earning in his "primary employment" sometime prior to the accident.

*Facts.*

Felix went to work for Eberline in October, 1978. Felix's starting salary at that time was $3.33 per hour as a utility worker in the machine shop. Between the years 1978 and 1982, Felix received promotions and increases in wages so that in October, 1982, he had risen to a grade 4–B welder and was earning $9.72 per hour. On October 18, 1982, due to lack of work, Eberline gave Felix the choice of being laid off or accepting a lower grade job as a machine operator at $6.35 per hour. Felix chose to continue working at the lower wage and was working at this rate when he was injured on December 9, 1982.

Eberline paid Felix temporary weekly benefits based on the $6.35 hourly rate from the time of the accidental injury until April 5, 1983. On April 6, 1983, Felix returned to work with Eberline as a grade 4–B welder and was earning an hourly wage of $9.04 per hour. A short time later he was again laid off and did not return to work for Eberline.

Both the trial court and the Court of Appeals ruled that Felix was entitled to compensation at the $9.72 per hour rate that he had earned as a welder rather than the $6.35 per hour rate that he was earning as a machine operator at the time of the accident. Both courts concluded that Felix's "primary employment" with Eberline had been as a welder at the higher rate.

The determination of average weekly wage for the purpose of computing compensation payments is governed by NMSA 1978, Section 52–1–20, which provides in pertinent part:

A. [W]henever the term "wages" is used, it shall be construed to mean the money rate at which the services rendered are recompensed under the contract of hire *in force at the time of the accident. * * ** (Emphasis added.)

The plain language of this statute dictates that the contract of hire *in force at the time of the accident* determines the amount of "wages" that a workman was receiving at the time of the accident. In this case it is undisputed that those "wages" were at the rate of $6.35 per hour.

Further, Section 52–1–20(B) is used to compute benefits based on that average weekly wage. It provides in pertinent part:

B. [A]verage weekly wages for the purpose of computing benefits provided in the Workmen's Compensation Act shall, except as hereinafter provided, be calculated upon the monthly, weekly, daily, hourly, or other remuneration which the injured or killed employee was receiving at the time of the injury, and in the following manner, to wit:

\* \* \* \* \* \*

(4) where the employee is being paid by the hour, the weekly wage shall be determined by multiplying the hourly rate by the number of hours in a day during which the employee was working at the time of the accident, or would have worked if the accident had not intervened, to determine the daily wage; then the weekly wage shall be determined from said daily wage in the manner set forth in Paragraph (3) hereof; provided, that in no case shall the hourly rate be multiplied by less than seven[.]

At the time of the accidental injury Felix was earning $6.35 per hour. Thus, under the foregoing provisions, that rate applies unless the circumstances of the case allow use of an exception. The Court of Appeals determined that Section 52–1–20(C) provides such an exception. It provides:

C. [P]rovided, further, however, that in any case where the foregoing methods of computing the average weekly wage of the employee by reason of the nature of the employment or the fact that the injured employee has not worked a sufficient length of time to enable his earnings to be fairly computed thereunder, or has been ill or in business for himself, or where for any other reason said methods will not fairly compute the average weekly wage; in each particular case, computation of the average weekly wage of

said employee [shall be made] in such other manner and by such other method as will be based upon the facts presented [to] fairly determine such employee's average weekly wage[.]

The question then is whether the formula provided by Section 52–1–20(B)(4) fairly represents Felix's average weekly wage at the time of the accident. If it does not, then the exception provided by Section 52–1–20(C) would allow for the determination of the average weekly wage by any method which was supported by the evidence.

The Court of Appeals based its decision on *Kendrick v. Gackle Drilling Co.,* 71 N.M. 113, 376 P.2d 176 (1962). In *Kendrick,* the injured workman had a very erratic income because he worked only a few days at each job. The rate of pay and length of employment varied with each job. The Court determined that the only possible method of determining an average weekly wage in that situation was to take an average of the preceding twenty-eight weeks earnings. The method of determining the workman's average weekly wages in *Kendrick* was a method which would most accurately reflect the workman's wages at the time of his injury. However, the instant case does not lend itself to use of such method. Felix opted to take the position as a machine operator with the reduced rate of pay. He worked at this position for approximately seven weeks prior to his injury and, under the contract for hire then in effect, earned $6.35 per hour at the time of his injury. Thus, under the plain wording of Section 52–1–20(B)(4), the method to be used to compute Felix's benefits under the Workmen's Compensation Act would be calculated upon the hourly remuneration which he was receiving at the time of the injury. There is no reason to calculate Felix's benefits under Section 52–1–20(C) because the method provided under Section 52–1–20(B)(4) fairly computes what Felix's average weekly wage was at the time of the accident. Section 52–1–20(C) is to be resorted to only in unusual circumstances as in *Kendrick,* where a worker's average weekly wage cannot fairly be determined by the precise methods outlined in Section 52–1–20(B).

To allow the Court of Appeals' opinion to stand would create numerous problems. In the instant case the workman is benefited by the use of the "primary employment" test. However, reversing the factual situation, if Felix was promoted to a higher grade where he earned a higher salary and was injured only seven weeks after such promotion, under the Court of Appeals' reasoning it could be argued that Eberline would pay only benefits based on the lower, pre-promotional rate because the "primary employment" of Felix would be considered at the lower level. Also, by what standard are we to determine a workman's "primary employment"? Suppose Felix had worked at the lower paying job for one year (instead of seven weeks) prior to his injury. Would his "primary employment" still be as a welder (at the higher salary) or as a machine operator (at the lower salary)? Further, assume that Felix had opted to be laid off rather than continuing to work at the lower salaried job; but, once in the outside work force, Felix could only find a minimum wage job with a different employer. Again, assume that Felix is injured on his new job. Under the "primary employment" test, the different employer would be required to pay benefits based on the higher wage of the position that Felix left. Inevitably, such situations would remove all predictability from the calculation of exposure rates for workmen's compensation insurance paid by New Mexico employers.

We therefore determine that the wording of Section 52–1–20(A) and (B) is plain and clear and dictates that benefits should be computed on the basis of the wages the worker was earning under the contract for hire in effect at the time of the accident. Where such wages are easily calculable and fairly compute the worker's average weekly salary, then the methods for calculating benefits under Section 52–1–20(B) control. No resort need be taken to the exceptions provided in Section 52–1–20(C). That section should be reserved for

the unusual case where the workman's average weekly wage is not easily determinable. Therefore, the Court of Appeals is reversed.

IT IS SO ORDERED.

STOWERS and WALTERS, JJ., concur.

DAN SOSA, Jr., Senior Justice, dissenting and adopting Court of Appeals opinion as his dissent.

EXHIBIT A

No. 7657

Court of Appeals of New Mexico.

Jan. 22, 1984.

**OPINION**

BIVINS, Judge.

Defendants appeal a worker's compensation award, claiming the trial court applied an incorrect hourly rate, and plaintiff cross-appeals, claiming the trial court erred in determining plaintiff only 40% permanently disabled. We first discuss this court's jurisdiction to consider these appeals. Determining that we do have jurisdiction, we then discuss the merits of the issues. We hold that the trial court applied a correct hourly rate and that its award of 40% partial disability should be sustained. Accordingly, we affirm.

1. *Jurisdiction to Consider Appeals.*

At the outset we are confronted with jurisdictional questions. The trial court's judgment entered on January 10, 1984 disposed of all issues except attorney fees. Both parties appealed from this judgment. Defendants filed their notice of appeal on January 18, 1984, and plaintiff filed his notice of appeal on February 8, 1984, pursuant to an order extending the time.

"A judgment or order is not final unless all the issues of law and of fact necessary to be determined, were determined, and the case completely disposed of so far as the court has power to dispose of it." *Johnson v. C & H Construction Co.,* 78 N.M. 423, 425, 432 P.2d 267 (Ct.App.1967) (citation omitted). In that case, as here, the issue of attorney fees was before the court. Since further action was contemplated, the judgment filed January 10 was not final or appealable. *Id.* The judgment did not contain an express determination that there is no just reason for delay as required by NMSA 1978, Civ.P. Rule 54(b)(1) (Repl. Pamp.1980). *See Thornton v. Gamble,* 101 N.M. 764, 688 P.2d 1268 (Ct.App.1984). Nor was it certified for interlocutory appeal. *See* NMSA 1978, § 39-3-4.

On January 24, 1984 the trial court announced by letter its decision on attorney fees and entered its order awarding fees on February 1, 1984. Thus, the case became ripe for appeal as of February 1, 1984, the date of the final order disposing of the remaining issue, attorney fees. We now consider the effect these events have on this court's jurisdiction to entertain the respective appeals.

First, as to defendants, their notice of appeal was filed before entry of the final judgment and, therefore, under the rules governing appellate procedure for civil cases, would not be timely. *See Public Service Co. of New Mexico v. Wolf,* 78 N.M. 221, 430 P.2d 379 (1967); NMSA 1978, Civ.App.R. 3(a) (Repl.Pamp.1984). NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 202(a) (Repl.Pamp.1983) is different. That rule provides: "A notice of appeal filed *after* the announcement of a decision, or return of the verdict, but before filing of the judgment or order shall be treated as filed after such filing and on the day thereof." *Id.* (emphasis added). Here defendants filed their notice before, not after, the announcement of the decision on attorney fees. Does this matter? Under the circumstances here, we hold it does not. Defendants filed their notice of appeal after the announcement of the trial court's decision, which contained the court's findings of fact and conclusions of law. That decision was filed on December 14, 1983. The trial court found plaintiff entitled to reasonable attorney fees but, as with the judgment, deferred a determination as to the amount. Defendants do not appeal the

award of attorney fees; only the hourly rate. We hold that defendants' notice of appeal complied with Rule 202(a). *Cf. State v. Melton*, 102 N.M. 120, 692 P.2d 45 (Ct.App.1984) (jurisdiction exists where notice of appeal from earlier judgment not refiled after amended judgment inasmuch as notice filed after return of verdict).

The situation with plaintiff is somewhat different. He filed his appeal within ten days after the filing of the final judgment, i.e., the order of February 1. Plaintiff's notice of appeal refers to the judgment of January 10, but does not mention the order of February 1. Does this matter? Under the rules of appellate procedure for civil cases, it would. NMSA 1978, Civ.App. Rule 4(b) (Repl.Pamp.1984) requires that the notice of appeal designate the judgment, order, decision or part thereof appealed from. A notice of appeal giving erroneous date of order is a nullity. *State v. Phillips*, 78 N.M. 405, 432 P.2d 116 (Ct. App.1967) (decided under former civil rule). Crim.App. Rule 202 does not require specificity as to the judgment or order appealed from. Therefore, although plaintiff referred to the incorrect order, or failed to include the final order, this was not fatal. This court has jurisdiction to entertain plaintiff's appeal.

Neither party raised this jurisdictional issue; however, an appellate court has the duty to determine whether it has jurisdiction over an appeal. *Rice v. Gonzales*, 79 N.M. 377, 444 P.2d 288 (1968). Under the circumstances present here, we find jurisdiction as to both appeals. We now proceed to consider the merits of the issues raised by the parties.

### 2. *Determination of the Applicable Hourly Rate.*

We summarize the pertinent findings of fact made by the trial court. Plaintiff went to work for defendant Eberline Instrument Corporation in October 1978, first as a utility worker in the machine shop, earning $3.33 per hour. Plaintiff received promotions and increases in wages over the years 1978–1982. In October 1982, he had risen to a Grade 4B Welder earning $9.72 per hour.. On October 18, 1982, due to lack of work Eberline gave plaintiff the choice of being laid off or accepting a lower grade job as a machine operator at an hourly rate of $6.35. Plaintiff chose the latter and was working at this rate when injured on December 9, 1982. Defendants paid plaintiff temporary weekly benefits based on the $6.35 hourly rate from the time of the accidental injury until April 5, 1983. On April 6, 1983 plaintiff returned to Eberline as a Grade 4B Welder at $9.04 per hour. The trial court also found that, although plaintiff at the time of the accident and for a period of approximately seven weeks prior thereto was and had been earning the lower hourly rate as a machine operator, during his employment with Eberline he had primarily been employed as a welder. The trial court concluded that plaintiff's hourly rate should therefore be based at the hourly rate of $9.72, the rate plaintiff had been earning as a welder before October 18, 1982.

Defendants argue that the trial court incorrectly based the compensation benefits on an hourly rate not in effect at the time of the accident. They point to NMSA 1978, Section 52–1–48, which provides:

> The benefits that a workman shall receive during the entire period of disability, and the benefits for death, shall be based on, and limited to, the benefits in effect *on the date of the accidental injury* resulting in the disability or death. (Emphasis added.)

Because plaintiff was earning $6.35 per hour "on the date of the accidental injury," defendants claim this was the applicable rate, not the $9.72 per hour plaintiff had previously earned.

The determination of average weekly wage for the purpose of computing compensation payments is governed by NMSA 1978, Section 52–1–20. Subparagraph (A) of Section 52–1–20 provides in part:

> A. whenever the term "wages" is used, it shall be construed to mean the money rate at which the services rendered are recompensed under the con-

tract of hire in force *at the time of the accident,* either express or implied * * *. (Emphasis added.)

Section 52–1–20(B) provides in pertinent part:

B. average weekly wages for the purpose of computing benefits provided in the Workmen's Compensation Act shall, *except as hereinafter provided,* be calculated upon the monthly, weekly, daily, hourly, or other remuneration which the injured or killed employee was receiving *at the time of the injury,* and in the following manner, to wit:

   \*    \*    \*    \*    \*    \*

(4) where the employee is being paid by the hour, the weekly wage shall be determined by multiplying the hourly rate by the number of hours in a day during which the employee was working *at the time of the accident,* or would have worked if the accident had not intervened, to determine the daily wage; then the weekly wage shall be determined from said daily wage in the manner set forth in Paragraph (3) hereof; provided, that in no case shall the hourly rate be multiplied by less than seven[.] (Emphasis added.)

It is undisputed that at the time of the accidental injury plaintiff earned $6.35 per hour. Thus, under the foregoing provisions that rate applies unless the circumstances of the case allow use of an exception. Plaintiff argues that the exception found in subparagraph (C) of Section 52–1–20 provides the authority for the trial court using the higher hourly rate. Section 52–1–20(C) provides:

C. provided, further, however, that in any case where the foregoing methods of computing the average weekly wage of the employee by reason of the nature of the employment or the fact that the injured employee has not worked a sufficient length of time to enable his earnings to be fairly computed thereunder, or has been ill or in business for himself, or where for any other reason said methods will not fairly compute the average weekly wage; in each particular case, compu-

tation of the average weekly wage of said employee [shall be made] in such other manner and by such other method as will be based upon the facts presented [to] fairly determine such employee's average weekly wage[.]

In arguing that the facts here fall within the above exception, plaintiff relies on *Kendrick v. Gackle Drilling Co.,* 71 N.M. 113, 376 P.2d 176 (1962). Although decided under former law, the supreme court in construing NMSA 1953, Section 59–10–12(m)(3), which is substantially the same as Section 52–1–20(C), said:

We construe § 59–10–12(m)(3), N.M.S.A.1953 to permit the trial court to determine the pre-injury average weekly wages of an injured workman by any method supported by the evidence in the particular case which fairly represents his average weekly wage if they cannot be fairly determined by one of the formulae set out in § 59–10–12(m)(2). (Citations omitted.)

71 N.M. at 118, 376 P.2d 176.

The supreme court in *Kendrick* went on to say that the exception in question:

seeks to develop a broad and liberal method of determining not a loss of earnings or income caused by the injury, but rather a method of arriving at the difference between the average weekly wage fairly computed before the accident and the employee's wages or wage earning ability after the accident.

71 N.M. at 118, 376 P.2d 176 (citations omitted). *Kendrick* was decided in 1962. In 1963, a year after *Kendrick,* the legislature changed the primary test of disability from wage-earning ability to capacity to perform work as delineated in the statute. *Quintana v. Trotz Construction Co.,* 79 N.M. 109, 440 P.2d 301 (1968); *see* NMSA 1978, §§ 52–1–24 and –25. Does it make any difference that disability is now based upon ability to perform as opposed to wage-earning capacity, the test in effect when *Kendrick* was decided? We think not; however, this does not answer the question.

The question is whether the formula provided by Section 52–1–20(B)(4) fairly represents plaintiff's average weekly wage. If not, then the exception provided by Section 52–1–20(C) permitted the trial court to determine the average weekly wage by any method supported by the evidence.

Here the trial court found plaintiff had worked as a welder from March 1980 until October 18, 1982 with his hourly rate during that period increasing from $6.03 to a high of $9.72. The trial court found plaintiff's employment primarily that of a welder. When he returned to work following the accidental injury, he worked as a welder at $9.04 per hour. Most of plaintiff's employment at Eberline was as a welder. Although plaintiff testified that he had not been promised a higher paying job in October 1982, when he chose to stay on as a machine operator at the lower rate and had no guarantee of being repromoted to his former status, he understood the demotion was temporary and would last only until Eberline got more work. That plaintiff returned after the accident to the status of a welder would tend to support that understanding. Defendants state that Eberline's "business had increased" by April 1983 when plaintiff returned.

We are unable to say that the facts here would not support the alternative method of computing the average weekly earnings in view of plaintiff's primary employment as a welder, the temporary nature of the demotion, and the language of *Kendrick* that the method which most fairly represents the worker's average weekly wage be used. *See* 2 A. Larson, *The Law of Workmen's Compensation* § 60.11(d) (1983).

Defendants argue that if the situation was reversed, that is, if plaintiff had been moved up from a Grade 2B Machine Operator at $6.35 to a Grade 4B Welder at $9.72, the courts would dismiss any suggestion that the lower rate should be used. The answer to that hypothetical would, of course, depend on the facts, but the argument does not provide a valid reason for rejecting the method applied to the facts here. *See* § 52–1–20(D). In *LaRue v.*

*Johnson,* 47 N.M. 260, 141 P.2d 321 (1943), a case where the employer and carrier argued that the exception should apply instead of the hourly rate since the worker did not work full time, the supreme court, in holding for the worker, seemed to apply a standard of fairness. We do so here. *Kendrick* says that the methods set forth in the statute are not exclusive, nor are they under all circumstances mandatory requirements binding on the trial court. The language of the present statute is consistent with *Kendrick.*

We hold that the trial court did not err in using the higher hourly rate as being more representative of plaintiff's primary employment, i.e., a welder.

### 3. *Determination of Disability.*

The trial court found plaintiff 40% permanently disabled. Plaintiff recognizes that findings in a worker's compensation case, as in other cases, will not be disturbed on appeal if supported by substantial evidence. *Marez v. Kerr-McGee Nuclear Corp.,* 93 N.M. 9, 595 P.2d 1204, 597 P.2d 1178 (Ct.App.1978). In fact, in *Perez v. International Minerals & Chemical Corp.,* 95 N.M. 628, 633, 624 P.2d 1025 (Ct.App.1981), we said, "Rarely should an appeal be taken by a workman or employer based upon a lack of substantial evidence to support the findings." Plaintiff claims, however, that the finding of 40% permanent disability is not supported by or is inconsistent with other findings. He requested a finding of 80% partial disability.

For a worker to be partially disabled, there must be (1) an inability, to some percentage-extent, to perform the usual work the worker was performing when injured; and (2) an inability, to some percentage-extent, to perform any work for which he is fitted. Section 52–1–25; *Medina v. Zia Co.,* 88 N.M. 615, 544 P.2d 1180 (Ct. App.1975).

As to the first part of the test, the trial court found that plaintiff's primary employment at the time of the accident was as a welder, although at the time of the accident he was working as a machine opera-

tor. Although the trial court did not make a specific finding that plaintiff could not continue to perform that work, plaintiff concedes that he could still perform some aspects of the job of a welder. After his accident, plaintiff returned to work for his employer doing bench-type light welding. Plaintiff's employer eventually laid him off in part because he could not do all the work. Plaintiff claims he could not find a welding job which called only for light welding or soldering.

Even if we assume that plaintiff could not perform to some percentage-extent the work he was doing at the time of the accident, nevertheless, the findings made as well as the evidence in support of those findings satisfy the second part of the test. The trial court made findings as to plaintiff's education, training, and past work experience and qualifications for work in other endeavors. It found plaintiff had qualified for training in computer technology.

Plaintiff argues that no evidence was offered that he was actually undertaking the training, or would undertake it. The trial court found plaintiff qualified for this training and "enrolled to commence such training at TVI in Albuquerque." *See Aranda v. Mississippi Chemical Corp.*, 93 N.M. 412, 600 P.2d 1202 (Ct.App.1979) (interpreting "any work" to mean work that was available and stating worker must make reasonable efforts to seek gainful employment). In addition, other evidence indicates that plaintiff had other skills on which he was able to draw; he was qualified to operate a forklift and various tools. *Cf. Aranda v. Mississippi Chemical Corp.* (interpreting the phrase "any work" to mean either a worker's ordinary employment or other employment approximating the same livelihood the worker might be expected to follow).

Based on the evidence and findings made, we cannot say 40% permanent disability was unreasonable, *Churchill v. City of Albuquerque*, 66 N.M. 325, 347 P.2d 752 (1959). *See also Barger v. Ford Sales Co.*, 89 N.M. 25, 546 P.2d 873 (Ct.App.1976).

We affirm the judgment. Plaintiff shall be allowed $1,250 attorney fees, not for his appeal, but for successfully defending against defendants' appeal.

IT IS SO ORDERED.

WOOD and MINZNER, JJ., concur.