784 P.2d 1030

**Theresa GRIEGO, Claimant–Appellee,**

v.

**BAG 'N SAVE FOOD EMPORIUM and Texas General Indemnity, Respondents–Appellants.**

No. 11105.

Court of Appeals of New Mexico.

Nov. 9, 1989.

Certiorari Denied Jan. 3 and 4, 1990.

David L. Duhigg, Duhigg, Cronin & Spring, Bruce P. Moore, Albuquerque, for claimant-appellee.

E.W. Shepherd, Hatch, Beitler, Allen & Shepherd, P.A., Albuquerque, for respondents-appellants.

## OPINION

**MINZNER, Judge.**

Employer appeals the hearing officer's determination of claimant's average weekly wages for computation of her rate of compensation, which was the only disputed issue. We reverse and remand for further proceedings.

Claimant was injured on February 26, 1988. She had worked for employer since July 1987. From July 1987 to January 1988, she had been employed as a delicatessen ("deli") clerk at employer's Santa Fe store. In January 1988, she was transferred to employer's new store in Rio Rancho.

During the three weeks prior to the week of the accident, the Rio Rancho store held its grand opening. Claimant worked an unusually high number of overtime hours during this period.

Two weeks prior to the week of the accident, claimant was promoted from deli clerk to salad bar manager. Claimant appears to have been in a unique position. Although her new title suggested employer considered her a manager, she remained an hourly employee.

After the accident, employer paid claimant benefits for temporary total disability. It is undisputed that claimant had not reached maximum medical improvement at the time of trial.

At the time of the hearing, claimant urged the hearing officer to apply NMSA 1978, Section 52–1–20(B) (Repl.Pamp.1987) (hereinafter subsection B).[1] Under that provision, claimant asked the hearing officer to make one of two different computations. The first was her average wage for the two weeks before the week of her accident, or $466.17. Claimant indicated in closing argument that figure would have given her the maximum compensation award under NMSA 1978, Section 52–1–41 (Repl.Pamp.1987). Alternatively, claimant asked the hearing officer to calculate what her earnings would have been the week of the accident. Because claimant was injured at 9:40 a.m. on a Friday, she did not work a full week the week of the accident. At the time of the injury she had completed forty hours of regular work and 1.91 hours of overtime. Her actual earnings for that week were $240.04. Claimant asked the hearing officer to assume that she would have completed an eight-hour day on Friday as well as on Saturday, and thus to determine that she would have worked approximately 14.2 hours of overtime that week. Claimant requested a finding, based on an "adjusted" last week, that, on the date of her injury, "her average weekly wage was $341.59."

Employer urged the hearing officer to apply Section 52–1–20(D) (hereinafter subsection D).[2] In effect, employer asked the hearing officer to ignore claimant's schedule during the four grand opening weeks, on the ground that the grand opening was a necessity temporarily requiring employer to pay extraordinarily high wages. *See Salcido v. Transamerica Ins. Group*, 102 N.M. 217, 693 P.2d 583 (1985). Under such circumstances, the average weekly wage is

---

**1.** Subsection B provides in pertinent part:

B. average weekly wages for the purpose of computing benefits provided in the Workmen's Compensation Act shall, *except as hereinafter provided*, be calculated upon the monthly, weekly, daily, hourly, or other remuneration which the injured or killed employee was receiving *at the time of the injury*, and in the following manner, to wit:

\* \* \* \* \* \*

(4) where the employee is being paid by the hour, the weekly wage shall be determined by multiplying the hourly rate by the number of hours in a day during which the employee was working *at the time of the accident*, or would have worked if the accident had not intervened, to determine the daily wage; then the weekly wage shall be determined from said daily wage in the manner set forth in Paragraph (3) hereof; provided, that in no case shall the hourly rate be multiplied by less than seven[.] [Emphasis added.]

**2.** Subsection D provides:

D. provided, that in case such earnings have been unusually large on account of the employer's necessity temporarily requiring him to pay extraordinary [sic] high wages, such average weekly earnings shall be based upon the usual earnings in the same community for labor of the kind the workman was performing at the time of the injury. In any event the weekly compensation allowed shall not exceed the maximum nor be less than the minimum provided by law.

based on the usual earnings in the same community for labor of the kind the worker was performing at the time of the injury.

Employer argued at trial that the hearing officer should calculate claimant's average weekly wage by identifying the average number of regular and the average number of overtime hours she had worked prior to the grand opening. Employer suggested that the correct computation should be based on approximately thirty-five regular hours and five overtime hours, or an average weekly wage of $240.00. Thus, employer asked the hearing officer to find that "the usual earnings" under subsection D were claimant's pre-grand opening average weekly wage.

The record indicates that the hearing officer accepted employer's argument that he should apply subsection D. The record also indicates that the hearing officer relied on claimant's "adjusted" last week, as well as the typical schedule followed by her supervisor, the deli manager.

The hearing officer found that:

7. Claimant's wage rate cannot be fairly calculated using Section 52–1–20(B) by reason that her job description, work location, and work hours had materially changed shortly before her accidlental [sic] injury.

8. Claimant's overtime hours were necessary to meet exigent circumstances as described in *Salcido v. Transamerica Ins. Group*, 102 N.M. 218 [217, 693 P.2d 583], to wit, to meet short term exceptional demand during a store opening.

8. [sic] Claimant was an hourly rate employee with supervisory duties over the salad bar.

\*    \*    \*    \*    \*    \*

11. Respondent had a policy against hourly rate employee overtime.

12. The deli manager worked nine to ten hours per day, a typical schedule for a supervisor.

13. Claimant worked Monday through Saturday.

14. Claimant, as a supervisor could reasonably have worked on a normal schedule 54 hours per week, 40 at $5.60 per hour, 14 at $8.40 per hour for a weekly gross salary of $341.60.

15. The resulting comp[ensation [sic] rate for Claimant should be two thirds of $341.60, or $227.73 per week.

16. Claimant's maximum compensation rate would be $227.73 per week if totally disabled.

Employer makes five arguments on appeal. They are (a) claimant failed in her burden of proof under subsection D; (b) the hearing officer's findings of fact are insufficient to support the application of subsection D; (c) finding of fact no. 14 is inconsistent with findings of fact nos. 7, 8, 9, and 11; (d) findings of fact nos. 14, 15, and 16 are not supported by substantial evidence; and (e) the disposition order is not supported by findings of fact that are supported by substantial evidence. We address each argument in turn.

■ Under subsection D, the hearing officer recognizes unique or exigent circumstances that produce an unusually high average weekly wage. Because employer sought the benefit of this subsection, employer had the burden of proof. *See Baca v. Bueno Foods*, 108 N.M. 98, 766 P.2d 1332 (Ct.App.1988) (one who seeks relief under statute has burden of proving he or she comes within its terms). Thus, if there was insufficient evidence to support the hearing officer's determination under subsection D, employer, rather than claimant, has failed to prove its case. *Id.*

■ In the absence of such proof, we do not think the legislature intended that no award be made. The legislature surely intended to enable the fact finder to make an appropriate award rather than to frustrate the effort. *Cf. Burruss v. B.M.C. Logging Co.*, 38 N.M. 254, 259, 31 P.2d 263, 266 (1934) (applying prior law, the supreme court held "[t]he provision is to aid an award, not to prevent one."). We conclude that if employer fails to prove sufficient facts to support a determination under subsection D, the hearing officer must make a determination under subsection B or sub-

section C.[3]

Employer also contends the findings made by the hearing officer are insufficient to support his determination under subsection D. He notes that no findings were made as to the number of days that the deli manager worked or his usual earnings.

Findings by a trial court judge need not cover every material fact but only ultimate facts. *McCleskey v. N.C. Ribble Co.*, 80 N.M. 345, 455 P.2d 849 (Ct.App. 1969); SCRA 1986, 1–052(B)(1)(b). Failure of the trial judge to make specific evidentiary findings of fact is not reversible error. *Id.* The findings of which employer complains are evidentiary findings. *See id.* They were, however, entered by a hearing officer rather than a district judge. NMSA 1978, § 52–5–7(B) (Repl.Pamp.1987). Thus, the question is whether the hearing officer's findings must cover more than the ultimate facts. The answer is no.

By statute the hearing officer is required to enter a compensation order containing findings of fact and conclusions of law after a formal hearing. The legislature has repealed the provision that the rules of civil procedure govern workers' compensation claims and actions. *See* 1986 N.M. Laws, ch. 22, § 102. Under present law, the division is authorized to adopt reasonable rules and regulations to effect the purposes of the Workers' Compensation Act. *See* NMSA 1978, § 52–5–4 (Repl. Pamp.1987). Under that authority, the director may choose to require that the hearing officer make evidentiary findings. *Cf. Redman v. Board of Regents of New Mexico School for Visually Handicapped*, 102 N.M. 234, 693 P.2d 1266 (Ct.App.1984) (fact that rules of civil procedure are made inapplicable to de novo hearings does not preclude State Board of Education from adopting procedures of its own to facilitate de novo hearings). The rules and regulations issued by the director presently include a provision that formal hearings are governed by the rules of civil procedure. Rules and Regulations, New Mexico Workmen's Compensation Administration, Rules of Procedure for Formal Hearings, I(1) (Undated).

The rule that a trial court must make ultimate findings of fact serves the purpose of providing a record of the basis for the fact finder's conclusion. *See generally* 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 52.06[1], at 52–139 (2d ed. 1989). The further principle that the trial court need not make evidentiary findings unless requested, *see* SCRA 1986, 1–052(B)(1)(f), excuses the fact finder from a task that imposes a burden without corresponding benefit. Given the purpose of the further principle, we apply it to hearing officers within the Workers' Compensation Division until such time as the director makes a different provision under Section 52–5–7(B).

Employer's argument that the hearing officer failed to make certain findings seems to be in effect a challenge to the comparison the hearing officer made between claimant and her supervisor. His argument that certain findings are inconsistent with others is similar.

Employer appears to contend that, in the absence of evidence of a worker in a position similar to claimant, under subsection D her average weekly wage must be based on her pre-grand opening schedule of regular and overtime hours. We disagree. Under subsection D, the hearing officer was required to try to determine "the usual earnings" for "labor of the kind the workman was performing."

Statutes are to be read in a way that facilitates their operation and the

---

**3.** Subsection C provides:

> C. provided, further, however, that in any case where the foregoing methods of computing the average weekly wage of the employee by reason of the nature of the employment or the fact that the injured employee has not worked a sufficient length of time to enable his earnings to be fairly computed thereunder, or has been ill or in business for himself, or where for any other reason said methods will not fairly compute the average weekly wage; in each particular case, computation of the average weekly wage of said employee [shall be made] in such other manner and by such other method as will be based upon the facts presented [to] fairly determine such employee's average weekly wage[.]

achievement of their goals. *See Miller v. New Mexico Dep't of Transp.*, 106 N.M. 253, 741 P.2d 1374 (1987). In this case, the position of salad bar manager was eliminated after the accident. The testimony at the hearing supports an inference that the position was unique. As indicated above, we believe the legislature intended to facilitate an award, not frustrate one.

Thus, we conclude that if there is no evidence of a worker in a position similar to claimant's, the hearing officer may rely on other evidence to determine "the usual earnings." He may, for example, be able to determine what claimant herself would have earned under normal circumstances.

The record supports a conclusion that the hearing officer relied in part on claimant's own earning record, as well as that of the deli manager, in order to identify "the usual earnings" under subsection D. If the evidence on which he relied was sufficient, then we must affirm. Employer's final two arguments address the sufficiency of the evidence.

■ Employer specifically contends the hearing officer improperly used the number of hours claimant's supervisor, the deli manager, worked daily in calculating claimant's weekly wage, because the deli manager was not performing the same work as claimant. It notes that the deli manager was paid a fixed salary, as were most managers, but claimant was paid on an hourly basis. It notes that in accord with company policy, although the deli manager could have worked overtime hours, he would have not received compensation for them. However, in accord with company policy, an hourly employee would not have been allowed to work overtime. Thus, employer contends the hearing officer could not use the deli manager in calculating claimant's wages.

The critical facts are whether claimant's new position as salad bar manager included supervisory duties which required overtime, and how much overtime she was likely to work. These were questions of fact for the hearing officer to decide.

■ We find evidence to support the officer's finding that claimant's new position required overtime in the personnel manager's authorization of her promotion to "department manager, salad bar," and in claimant's testimony concerning her duties and responsibilities. It was the hearing officer's duty to weigh the evidence and resolve any conflicts. Even if this court might have decided differently, a reviewing court is not permitted to determine how it would have decided the issue. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988). If there is sufficient evidence in the record for a reasonable mind to accept as adequate support for the conclusion reached, the court will not disturb the finding. *Id.* We conclude the hearing officer did not abuse his discretion when he determined that claimant, as a supervisor, would work overtime on a regular basis in her position as a salad bar manager.

■ Once the hearing officer determined that claimant would work overtime regularly, he then had to determine the amount of overtime she would reasonably work. The hearing officer had before him the time sheets for claimant and her fellow workers in both supervisory and non-supervisory positions at the stores where she worked. The hearing officer found the deli manager typically worked nine to ten hours per day. From this evidence, the hearing officer concluded that claimant, although a low-level supervisor, might reasonably work an average of fourteen hours of overtime weekly since she worked a six-day week, or one hour of overtime for each of five days Monday through Friday and nine hours of overtime for Saturday.

Our review must be of the whole record. *Id.* Having reviewed the whole record, we cannot say that the record supports the hearing officer's determination.

There is insufficient evidence in the record to show that claimant's overtime hours during the two weeks after her promotion were the result of the promotion. Rather, the evidence was that the hours worked during the grand opening were unusual for all employees and that at the end of the grand opening all employees returned to pre-grand opening schedules. There was evidence that full-time employ-

ees tended to work approximately forty hours a week, some of which might be overtime hours, if the employee worked on a Saturday or Sunday. Claimant's schedule prior to the grand opening is consistent with that evidence. There is no evidence to the contrary. Under these circumstances, on a whole record review, finding no. 14 is not supported by substantial evidence.

Because finding no. 14 supports the hearing officer's decision that claimant's average weekly pay was $341.60, the compensation order must be reversed and the case remanded for entry of amended findings and conclusions. We have determined that employer had the burden of proof under subsection D and that the evidence is insufficient to support the determination of an average weekly wage under that subsection. Thus, we remand to permit the hearing officer to calculate claimant's average weekly wage pursuant to subsection B or subsection C.

■ We recognize that employer has not challenged the determination that subsection B is inapplicable. Findings of fact not challenged become the facts on appeal. *See Latta v. Harvey,* 67 N.M. 72, 352 P.2d 649 (1960). However, claimant has asked this court to hold that the trial court erred in failing to apply subsection B, in the event we determine that subsection D is not applicable. *See* SCRA 1986, 12–201(C). Because we have determined that the determination under subsection D was not supported by substantial evidence, we consider the applicability of subsection B.

Subsection B offers the usual rule for computation of average weekly wage using the claimant's own monthly, weekly, daily, or hourly wage. Where wages can be calculated by the precise methods outlined in subsection B to fairly compute the worker's average weekly salary, subsection B controls. *Eberline Instrument Corp. v. Felix,* 103 N.M. 422, 708 P.2d 334 (1985). Although the hearing officer found that claimant's wage could not be fairly calculated, because her job description, work location, and hours had materially changed shortly before her injury, the preliminary question is whether the average weekly wage is easily determinable under the statutory formula.

In *Eberline,* the supreme court reviewed subsection B and concluded that it must be applied unless "the workman's average weekly wage is not easily determinable." *Id.* at 425, 708 P.2d at 337. In that case the claimant was paid $9.72 per hour for his job as a welder. However, two months before his injury, he accepted a lower-paying job as a machine operator at $6.35, rather than being laid off due to lack of work. The supreme court held that because the claimant was receiving $6.35 at the time of the injury and his wage was easily calculable, he should be compensated at such rate using the subsection B analysis. *Id.* at 424, 708 P.2d at 336.

Even though the case before us involves the issue of the number of hours of overtime worked as opposed to the hourly rate issue in *Eberline,* we believe the rule set forth in that case is applicable because both determinations must be combined in order to calculate the average weekly wage. Under *Eberline,* the fact finder must apply subsection B if an average weekly wage is easily determinable under the statutory formula.

We must consider the statute in its entirety in applying it. *See Batte v. Stanley's,* 70 N.M. 364, 374 P.2d 124 (1962). The statute does not specifically include overtime, which is at issue in this case; however, overtime is usually included in "wages" even though it may not necessarily be guaranteed. *See Neeley v. Union Potash & Chemical Co.,* 47 N.M. 100, 137 P.2d 312 (1943); *see generally* 2 A. Larson, *The Law of Workmen's Compensation* § 60.12(d) (1989); *cf. Hernandez v. Mead Foods, Inc.,* 104 N.M. 67, 716 P.2d 645 (Ct.App.1986) (calculation of benefits without overtime wages was substantially correct and thus would be sustained on appeal).

Unlike statutes in many states, the New Mexico statute does not require that a worker have been employed for a specific designated period prior to the injury in order to make the average weekly calculation. *See* 2 A. Larson, *supra,* at § 60.11(b). However, the term "average weekly wage" indicates a legislative expectation the fact

finder will identify a representative week. In identifying a representative week, the fact finder may adopt any method that fairly calculate the worker's usual earnings. *See Neeley v. Union Potash & Chemical Co.*

■ On the present record, there has been no determination of a representative week. Claimant contends, in effect, that as a result of her promotion none of the weeks prior to the grand opening can be considered. We disagree. For the reasons stated above, we believe there is insufficient evidence in the record to support a determination that the overtime resulted from the promotion. The evidence showed those weeks were unusual for all employees. That does not mean that these hours are irrelevant.

■ Employer's theory at the hearing was that an unusual amount of overtime required application of subsection D. The theory seems to have been that the grand opening weeks must be ignored. If employer fails to prove the elements of subsection D, however, the hearing officer must apply either subsection B or subsection C. Under these subsections, the hours need not be ignored.

Under the circumstances of this case, on remand the hearing officer has two options. He may choose to average the grand opening weeks with some number of pre-grand opening weeks to determine if a representative wage can be determined under subsection B. If, on remand, he determines that the calculation under subsection B does not produce a fair figure, he may calculate the average weekly wage under subsection C.

We reverse and remand for further proceedings not inconsistent with the opinion. We have determined that oral argument is unnecessary. SCRA 1986, 12–214.

IT IS SO ORDERED.

BIVINS, C.J., and CHAVEZ, J., concur.