908 P.2d 791 (1995)
121 N.M. 98
Eppie VILLANUEVA, Worker-Appellant,
v.
SUNDAY SCHOOL BOARD OF the SOUTHERN BAPTIST CONVENTION, d/b/a Glorieta Baptist Convention Center, et al., and Fireman's Fund Insurance Co., Employer/Insurer-Appellees.
No. 16214.
Court of Appeals of New Mexico.
October 26, 1995.
*793 Stephen T. Lecuyer, Mettler & Lecuyer, P.C., Corrales, for Worker-Appellant.
Robert A. Martin, Lisa T. Mack, Bradley & McCulloch, P.A., Albuquerque, for Employer/Insurer-Appellees.

OPINION
PICKARD, Judge.
1. Worker appeals from a compensation order. She contends the following decisions of the workers' compensation judge were erroneous: (1) the calculation of the average weekly wage; (2) the finding that Worker was able to return to medium work; (3) the granting to Respondents of credits for benefits paid; (4) the determination that Respondents are not required to pay the bill of Northeastern Regional Hospital; (5) the denial of Worker's motion to compel discovery; and (6) the conclusion that Worker's claim is barred.
2. We reverse a portion of the judge's determination concerning the average weekly wage. We affirm the other issues, except that we remand for correction of the clerical error alleged in the sixth issue.

Discussion
3. Worker was employed as a temporary food service utility worker for Employer when she was injured in a work accident on August 26, 1993. After a hearing on the merits, the judge found as follows: (1) Worker is permanently partially disabled by eleven percent; (2) her average weekly wage was calculated to be $85.10 based on the actual annual income she was paid for her part-time, temporary, seasonal work; (3) Worker was able to return to sedentary, light, or medium duty prior to May 31, 1994, the date of maximum medical improvement; (4) Respondents are entitled to credit for disability benefits paid after offers of suitable employment were made to Worker before and after that date; and (5) Respondents are not required to pay the unauthorized bill of Northeastern Regional Hospital.

1. Calculation of Average Weekly Wage

4. Employer is a conference center. The business season begins in May, decreases in the fall, and ceases in October with the exception of brief periods during the winter holidays and spring break. Worker was hired as a temporary employee. There was no contract between Worker and Employer guaranteeing any specific hours, and Worker did not have to promise that she would be available for work. During the four-or-five-year period that Worker was employed at the conference center, she worked six or seven months each year. Worker performed services and received wages from Employer for twenty-two out of the twenty-six weeks immediately preceding the date of injury.
5. NMSA 1978, Section 52-1-20 (Repl. Pamp.1991) (effective Jan. 1, 1991), provides in pertinent part:
B. the average weekly wage shall be determined by computing the total wages paid to the worker during the twenty-six weeks immediately preceding the date of *794 injury and dividing by twenty-six, provided that:
(1) if the worker worked less than twenty-six weeks in the employment in which the worker was injured, the average weekly wage shall be based upon the total wage earned by the worker in the employment in which the worker was injured, divided by the total number of weeks actually worked in that employment;
....
C. provided, further, however, that in any case where the foregoing methods of computing the average weekly wage of the employee by reason of the nature of the employment or the fact that the injured employee has been ill or in business for himself or where for any other reason the methods will not fairly compute the average weekly wage, in each particular case, computation of the average weekly wage of the employee in such other manner and by such other method as will be based upon the facts presented fairly determine such employee's average weekly wage[.]
The judge determined Worker's average weekly wage under Subsection C while Worker contends that her average weekly wage should be calculated with reference to the twenty-two weeks she worked under Section 52-1-20(B)(1) or at least only with reference to the twenty-six weeks prior to her injury under Section 52-1-20(B).

A. Number of weeks included in calculation

6. The judge calculated Worker's average weekly wage by totaling her wages from the fifty-two weeks prior to the date of injury and dividing by fifty-two. Worker argues that Respondents failed to meet their burden of proving that they were entitled to the benefits of Subsection C. See Griego v. Bag `N Save Food Emporium, 109 N.M. 287, 290, 784 P.2d 1030, 1033 (Ct.App.1989) (party seeking relief under statute has burden of proving it comes within its terms), certs. denied, 109 N.M. 262, 784 P.2d 1005 (1990). We are required to review the whole record to determine whether substantial evidence supports the judge's decision. See Tallman v. ABF (Arkansas Best Freight), 108 N.M. 124, 130, 767 P.2d 363, 369 (Ct.App.), cert. denied, 109 N.M. 33, 781 P.2d 305 (1988).
7. To learn whether she would be offered work during a particular week, Worker called a secretary at Employer on Wednesday afternoons. Sometimes Worker was told that there was no work for her because business was slow. There was also evidence that Worker's hours were limited in accordance with Employer's written policy of preventing temporary employees from working in excess of 955 hours in a calendar year without a special exception. There was no evidence that Worker asked to have her job reclassified or sought a regular rather than temporary position so that she would not be subject to the hours limitation. During the ten years prior to the accident, Worker's only other employment outside the home was six months of employment as a fast food worker at a Dairy Queen.
8. Worker contends that substantial evidence is lacking to support a determination that her hours were limited by the seasonal nature of Employer's business, as opposed to its policy of restricting the hours of temporary workers. We note that the judge's decision to use the fifty-two weeks preceding Worker's injury to compute her average weekly wage did not rest only on the seasonal nature of the work, but also on Worker's actual vocational history. Thus, it is apparent the judge saw both that opportunities for work with Employer varied with the seasons and that Worker's relation to the employment was consistently of a temporary nature. In our view, either or both of these factors support the judge's decision to use Subsection C. See 2 Arthur Larson, The Law of Workmen's Compensation § 60.22(a) [hereinafter Larson] (probable future loss is a full-time loss only if the line of work for which the worker is trained and qualified will normally continue to provide full-time employment) and § 60.21(c) (if there is no reason to suppose that the worker's choice of a part-time relation to the labor market will change in the future period into which the disability will extend, it is unrealistic to turn that person from a part-time able-bodied worker into a full-time disabled worker) (1995); see also Justiz v. Walgreen's, 106 N.M. 346, 348, 742 *795 P.2d 1051, 1053 (1987) ("Fairness mandates consideration of what petitioner would have earned, in total, had she not been injured.").
9. Worker cites Shaw v. Wal-Mart Stores, Inc., 117 N.M. 118, 119, 869 P.2d 306, 307 (Ct.App.), cert. denied, 117 N.M. 215, 870 P.2d 753 (1994), to support her claim that, regardless of the evidence bearing on the basis for the limitation on her hours, Subsection C is not applicable because Subsection B was amended for the specific purpose of addressing cases such as this one. We reject this claim for the following reasons.
10. In Shaw we stated our belief that one purpose of the new Subsection B was to prevent workers from being unfairly benefitted by a period of unusually high wages just prior to the injury. Id. Prior to the amendment, Subsection B required calculation of average weekly wage based on remuneration the employee was receiving at the time of the injury. Section 52-1-20(B) (effective until Jan. 1, 1991). In amending Subsection B, the legislature appears to have been attempting to address the difficulties our courts have experienced in determining average weekly wage when a worker's circumstances have changed at some recent point prior to the injury. Shaw, 117 N.M. at 119, 869 P.2d at 307. That is not the case here with respect to the number of weeks that should be used in the calculation; Worker consistently worked a seasonal schedule as a temporary employee subject to the yearly restriction on hours. Hence, we are not persuaded that use of the twenty-two or twenty-six weeks of Subsection B is mandatory. Moreover, the only change in Subsection C, which was amended at the same time as Subsection B, was to eliminate language that allowed it to be applied if the injured employee had not worked long enough to enable her earnings to be fairly computed. Shaw, 117 N.M. at 119, 869 P.2d at 307. Reading amended Subsections B and C together, we cannot discern any legislative intent to withdraw authority to use the latter subsection when the more mechanical formulas cannot fairly be applied. See generally Werner v. Wal-Mart Stores, Inc., 116 N.M. 229, 231, 861 P.2d 270, 272 (Ct.App.1993) (all sections of a statute must be considered together in order to give meaning to a single section that will fulfill the underlying legislative intent).
11. Under the circumstances of this case, we believe that application of Subsection B would lead to unfairness because it would inflate Worker's benefits beyond what the evidence tends to prove she intended to earn in the past and intended to earn in the future. See Larson, supra, § 60.21(C); cf. Duran v. Albuquerque Pub. Schs., 105 N.M. 297, 300, 731 P.2d 1341, 1344 (Ct.App.1986) (no unfairness results where school worker was compensated based on a calculation that divided her yearly salary by fifty-two even though she worked only forty weeks), cert. denied, 105 N.M. 290, 731 P.2d 1334 (1987). We directed a similar result in Apodaca v. Payroll Express, Inc., 116 N.M. 816, 821, 867 P.2d 1198, 1203 (Ct.App.1993), in which we stated that the workers' compensation judge must look to the seasonal aspect of the employment and reduce the average weekly wage accordingly.
12. Worker contends that her employment during 1993 must be considered a new period of employment because she did not work from October 1992 until February 1993 at which time she was given an increase in hourly pay. We are not persuaded that this evidence conclusively establishes that Worker should be treated as a new employee as of February 1993. The same evidence permits the inference that Worker's employment was seasonal and that her part-time relationship to work was intentional. See Tallman, 108 N.M. at 128, 767 P.2d at 367 (under whole record review, appellate court views evidence in the light most favorable to the agency's decision).

B. Rate of pay

13. In computing the average weekly wage, the judge not only averaged Worker's hours over fifty-two weeks, but she also considered Worker's different rates of pay per hour over that same period. At the beginning of the fifty-two week period Worker was earning $5.61 per hour, and she was earning $6.13 per hour throughout the twenty-six week period before the date of the injury a year later. Worker argues that the judge's inclusion of lower hourly rates in *796 calculating the average weekly wage is inconsistent with: (1) the directive in Subsection B to compute the total wages paid during the twenty-six weeks immediately preceding the date of injury and dividing by twenty-six and (2) the requirement of Subsection C that any alternative method "fairly determine" the employee's average weekly wage. We agree.
14. Although we have concluded that substantial evidence supports the judge's decision to use Subsection C rather than Subsection B to calculate the average weekly wage, that conclusion does not necessarily support the use of average wages per hour over the entire fifty-two week subject period. Subsection C permits departure from the mechanical formula set forth in Subsections A and B only to the extent that such formula will not fairly compute the average weekly wage. The unfairness in this case is apparent from Worker's temporary, seasonal employment, not from the hourly rate of pay.
15. Prior to the 1991 amendment, Eberline Instrument Corp. v. Felix, 103 N.M. 422, 423-24, 708 P.2d 334, 335-36 (1985), and Salcido v. Transamerica Ins. Group, 102 N.M. 217, 218, 693 P.2d 583, 584 (1985), held that benefits were to be calculated upon the hourly remuneration an employee was receiving at the time of the injury. As we have noted, Shaw altered the law to provide a fixed length of time over which the average weekly wage would be calculated. The twenty-six-week period of time would be lengthy enough to prevent any unfairness to either party caused by a period of unusually high or low wages just prior to the injury. See Shaw, 117 N.M. at 119, 869 P.2d at 307. Because Worker earned $6.13 per hour over the entire twenty-six-week period of time prior to her injury, it would be consistent with the legislative intent to use only that $6.13 rate of pay for calculating the average weekly wage. Resort to Subsection C for purposes of ascertaining the hourly rate is therefore unwarranted.
16. Under the circumstances of this case, therefore, we hold that substantial evidence supports the judge's use of Subsection C to calculate Worker's average weekly wage for purpose of the number of weeks, but not for purpose of the hourly rate.

2. Worker's Ability to Return to Medium Work

17. The judge found that Worker was able to return to sedentary, light, or medium duty prior to May 31, 1994, the date of maximum medical improvement. Worker argues that: (1) the finding is not supported by medical testimony; (2) she has only been released by her treating physician to perform sedentary work; and (3) she is functionally restricted to sedentary work. We are not persuaded. Evidentiary facts and unchallenged findings support the inference that Worker's reports and manifestations of her physical condition were not credible. We explain.
18. The judge made the following unchallenged findings of fact. See Stueber v. Pickard, 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991) (unchallenged findings are binding on appeal). A November 1, 1993, MRI showed that Worker had bulging discs, but no neural impingement. This showing was corroborated by a normal EMG on July 19, 1994. A January 4, 1993, functional skills assessment was not accurate. Dr. Thorpe testified that Worker may be able to work at the physical capacity she was at before the accident. A June 14, 1994, bone scan was normal. Dr. Thorpe testified that the medical record and notes found there was little or no objective basis for Worker's complaints. Dr. Naimark concluded that Worker's pain disorder causes her to report physical problems out of proportion to their actual physical state. Surveillance videotapes taken in December 1993 and November 1994 showed that Worker had greater physical mobility than she exhibited at work.
19. Evidence introduced at the hearing further supports the judge's determination regarding Worker's ability to return to work. Dr. Buchanan reported that Worker's gait was normal coming to and leaving his office, but that it worsened when she approached the examination room. The functional capacity evaluation performed on April 15, 1995, noted that Worker's submaximal and inconsistent performance made accurate identification of her true abilities impossible. Dr. Thorpe testified that the evaluation showed *797 that Worker voluntarily restricted herself and that sedentary work was the minimum she should be able to do, but that she might be able to perform light or medium duty work. The surveillance videotapes showed Worker moving, walking, and bending freely, easily climbing in and out of vehicles, lifting grocery bags into a car with one hand, loading a 20 pound sack into a pick-up truck, and lifting a small child into a car. In our view, this evidence is credible in light of the whole record. See Tallman, 108 N.M. at 128, 767 P.2d at 367 (standard of review).
20. We hold that the foregoing findings and evidence support the determination that Worker was able to return to medium duty work prior to May 31, 1994. See id.

3. Credit for Benefits Paid

21. Worker contends that the judge's findings and the evidence are insufficient to support the determination that Respondents are entitled to credit for payments they made after Employer made offers of suitable employment to Worker. We disagree. First, as Worker acknowledges, any failure to make specific evidentiary findings as opposed to ultimate findings is not reversible error. See Griego, 109 N.M. at 291, 784 P.2d at 1034. Second, the challenged ultimate finding is supported by substantial evidence.
22. As a preliminary matter, we note that Worker requested a general conclusion of law that Respondents are entitled to a credit for benefits previously paid. That request, combined with the scope of Worker's argument on appeal, confirms that she is not challenging Respondents' right to a credit for temporary total disability benefits paid, if any, after the date of maximum medical improvement. See generally NMSA 1978, § 52-1-25.1(A) (Repl.Pamp.1991) (effective Jan. 1, 1991) (temporary total disability defined). We focus now on the period prior to the date of maximum medical improvement.
23. Worker admitted that she attempted to return to work in March, June, and November 1994. She testified that she was unable to do the work. However, the unchallenged findings and credible evidence bearing on Worker's ability to return to work contradict her testimony that she was unable to carry out the jobs offered. It follows that Worker was not entitled to temporary total disability benefits subsequent to the offer of work in March 1994 and through May 31, 1994, the date of maximum medical improvement. See § 52-1-25.1(B) (if, prior to date of maximum medical improvement, injured worker is released to return to work and employer offers work at pre-injury wage, the worker is not entitled to temporary total disability benefits); Jeffrey v. Hays Plumbing & Heating, 118 N.M. 60, 63, 878 P.2d 1009, 1012 (Ct.App.1994) (Section 52-1-25.1 applies so long as the worker is offered the position).
24. In sum, we hold that a fair consideration of the judge's findings and the pertinent evidence supports a decision to grant credit to Respondents for payment of temporary total disability benefits since March 1994. See Herrera v. Roman Catholic Church, 112 N.M. 717, 721-22, 819 P.2d 264, 268-69 (Ct.App.1991) (findings construed so as to uphold a judgment).

4. The Bill of Northeastern Regional Hospital

25. Worker challenges the judge's ruling that Respondents were not liable for expenses of $170.34 incurred by Worker at Northeastern Regional Hospital. This issue may or may not concern NMSA 1978, Section 52-1-49 (Repl.Pamp.1991) (effective Jan. 1, 1991), and its relationship to doctors employed by other health care providers or its relationship to emergency services. Probably due to the small amount of money at issue, Worker's contention was raised and treated, both below and on appeal, in a perfunctory and unsatisfactory manner by all parties. Worker did not request findings of fact on the possible emergency nature of the medical services, did not brief the issue as one of emergency services in her brief in chief, and did not ever mention Workers' Compensation Administration rules on emergency services until her reply brief. As a result, Respondents have not had an opportunity to reply to any such contentions.
*798 26. Although they may have exceptions not applicable here, four general propositions of the law concerning appellate review are well settled. First, appropriate findings must be tendered to preserve an issue for review. Fenner v. Fenner, 106 N.M. 36, 41, 738 P.2d 908, 913 (Ct.App.), cert. denied, 106 N.M. 7, 738 P.2d 125 (1987). Second, an argument with citation to authorities must be contained in the brief. State v. Clifford, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994). Third, raising new issues in the reply brief, when it is too late for an appellee to respond to them, is insufficient to obtain a review of those issues. Hale v. Basin Motor Co., 110 N.M. 314, 320-21, 795 P.2d 1006, 1012-13 (1990). Finally, in order to obtain a reversal, an appellant must clearly point out error. Novak v. Dow, 82 N.M. 30, 33, 474 P.2d 712, 715 (Ct.App.1970). Because none of these things was done in this case in any way that would allow us to make a meaningful decision on any issues concerning health care providers or emergency services, we expressly decide no such issues on this appeal. Accordingly, on the facts and procedural posture of this case, we cannot say the judge erred in denying Worker's claim for payment of the hospital bill.

5. Motion to Compel

27. As the case moved through discovery, Worker unsuccessfully sought to compel Respondents to disclose information bearing on the basis and impact of Employer's written policy of limiting temporary workers to no more than 955 hours of work per year. Worker desired to establish that Employer's policy had an unlawful disparate impact upon Hispanic workers. Worker argues that if the hourly limitation is unlawfully discriminatory then her average weekly wage cannot be based upon the limited hours she was permitted to work.
28. We are not convinced that a worker's compensation case constitutes the proper forum for evaluating and measuring issues concerning workplace discrimination. Trujillo v. Tanuz, 85 N.M. 35, 39-40, 508 P.2d 1332, 1336-37 (Ct.App.1973), cited by Worker, does not suggest otherwise. Trujillo did not incorporate policy considerations outside the statutory scheme in the calculation of average weekly wages. Rather, our opinion focused on statutory language, now included in Section 52-1-20(D), which prohibited computation of an average weekly wage that is less than the minimum provided by law. Trujillo does not, therefore, stand for the broad proposition asserted by Workerthat the calculation of average weekly wage cannot be based on any policy that may be unlawful. Trujillo is limited to minimum wage laws.
29. Based on the foregoing, we hold that the judge did not abuse her discretion in denying Worker's motion to compel discovery. See Kerman v. Swafford, 101 N.M. 241, 245, 680 P.2d 622, 626 (Ct.App.) (standard of review), cert. denied, 101 N.M. 189, 679 P.2d 1287 (1984).

6. Determination that Worker's Claim Is Barred

30. A review of the findings of fact and conclusions of law leaves no doubt that the conclusion stating that Worker's claim "is barred" was purely a typographical error, and we read it as if written "is not barred." See Cochrell v. Hiatt, 97 N.M. 256, 257-58, 638 P.2d 1101, 1102-03 (Ct.App.1981) (error can be corrected with leave of appellate court).

Conclusion
31. We reverse the determination that the hourly portion of Worker's average weekly wage is anything other than $6.13, we remand for a new calculation of the average weekly wage and for correction of the clerical error, and we affirm the other issues. On remand, the judge should award an appropriate attorney fee for Worker's successful resolution of the two appellate issues on which she prevailed.
32. IT IS SO ORDERED.
BOSSON and WECHSLER, JJ., concur.